**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

WALE ADE-OSHIFOGUN,      )
          )
          Plaintiff,      )
          )
          v.      )      No.
          )
PRAIRIE-HILLS ELEMENTARY SCHOOL      )
DISTRICT #144,      )
          )
          Defendant.      )

**VERIFIED COMPLAINT**

NOW COMES the Plaintiff, WALE ADE-OSHIFOGUN, and complains against the

Defendant, PRAIRIE-HILLS ELEMENTARY SCHOOL DISTRICT #144, as follows:

1.    This is a proceeding for declaratory and injunctive relief and damages to redress the

deprivation of Plaintiff's civil rights under Title VII of the Civil Rights Act of 1964, <u>as</u>

<u>amended</u>, 42 U.S.C. §2000e <u>et</u> <u>seq</u>. ("Title VII") and under 42 U.S.C. §1981

("Section 1981").

**JURISDICTION AND VENUE**

2.    Jurisdiction of this court is invoked pursuant to Title VII, 42 U.S.C. §2000e-5, 42

U.S.C. §1981 and §1981(a) as well as 28 U.S.C. §§1337 and 1343.

3.    Defendant further constitutes an "employer" within the meaning of Title VII, 42

U.S.C. §2000-(b), based on its engagement in an industry affecting commerce and

its employment of fifteen (15) or more employees for each workup day in each of

twenty (20) or more calendar weeks in the current or preceding calendar year.

4.    Prior to filing this civil action, the named Plaintiff timely filed written charges under

oath asserting employment discrimination with the Equal Employment Opportunity Commission ("EEOC"). A copy of the written charges marked Exhibit "A" is attached hereto and made a part of this Complaint hereof. Plaintiff received a Notice of Right to Sue. A copy of said Notice of Right to Sue marked Exhibit "B" is attached hereto and made a part of this Complaint hereof.

5. Plaintiff timely filed this action in federal court.

6. The unlawful employment practices stated herein were, in part, committed within the Northern District of Illinois. Accordingly, venue thus lies within this judicial district under 28 U.S.C. §1391(b). Venue further lies within this judicial district under 28 U.S.C. §1391, since Prairie-Hills Elementary School District #144 does business in this judicial district.

## **THE PARTIES**

7. Plaintiff, WALE ADE-OSHIFOGUN, is a resident of the City of Matteson, Cook County, Illinois, and lives within this judicial district.

8. Defendant PRAIRIE-HILLS ELEMENTARY SCHOOL DISTRICT #144 (hereinafter, "PRAIRIE-HILLS") is an educational institution in the Village of Markham, State of Illinois and provides/operates eight (8) public schools within its geographical boundaries. It has a BOARD OF EDUCATION which establishes the school district policies within the framework of Illinois Board of Education and was plaintiff's employer during the relevant period giving rise to this cause of action.

9. Dr. I.V. FOSTER, JR. [hereinafter, "FOSTER"] is the Superintendent of PRAIRIE-HILLS SCHOOL DISTRICT 144 and was employed by PRAIRIE-HILLS at the

relevant time giving rise to this cause of action.

10. DR. KIMAKO PATTERSON [hereinafter, "PATTERSON"] is the Assistant Superintendent and the Director of Curriculum/Instruction and Technology at PRAIRIE-HILLS and employed by PRAIRIE-HILLS at the relevant time giving rise to this cause of action.

11. CAROLYN SMILEY [hereinafter, "SMILEY"] is the Secretary of the Technology Department at PRAIRIE-HILLS and employed by PRAIRIE-HILLS at the relevant time giving rise to this cause of action.

12. JUANITA MCWILLIAMS [hereinafter, "MCWILLIAMS"] was an employee at PRAIRIE-HILLS and employed by PRAIRIE-HILLS at the relevant time giving rise to this cause of action.

13. PRINCESS JORDEN [hereinafter, "JORDAN"] was an employee at PRAIRIE-HILLS and employed by PRAIRIE-HILLS at the relevant time giving rise to this cause of action.

## **ALLEGATIONS**

14. The named Plaintiff, WALE ADE-OSHIFOGUN, is asserting claims for discrimination on the basis of national origin under Title VII and 42 U.S.C. §1981, breach of contract, wrongful discharge, slander and defamation, and false light invasion of privacy.

15. Plaintiff is black and a minority, and, therefore, belongs to a protected group. He has always performed his job satisfactorily and continued to perform his jobs satisfactorily.

16. PRAIRIE-HILLS has engaged in a pattern and practice of discrimination and retaliation. Furthermore, PRAIRIE-HILLS has engaged in a practice of intimidation and retaliation which, on information and belief, has had the effect of making additional people more reluctant to come forward with complaints.

17. The working conditions of this Plaintiff at PRAIRIE-HILLS are permeated with discriminatory intimidation, ridicule and insult which have changed the conditions of Plaintiff's employment and created an abusive and hostile work environment for the Plaintiff.

18. Plaintiff's performance was as good as that of PATTERSON [US Citizen] who is still employed by PRAIRIE-HILLS.

19. Plaintiff was terminated because of his national origin, Nigerian. Further, Plaintiff was wrongfully discharged, slandered and defamed, and placed in false light invasion of privacy. Defendant also breached its contract with the Plaintiff.

20. Plaintiff was hired by Prairie-Hills Elementary School District #144 in the summer of 2004 as a Manager of Information Systems.

21. In the summer of 2005, Plaintiff was reclassified as Director of Information Systems.

22. From summer of 2005 to April 29, 2009, Plaintiff worked as the Director of Information Systems.

23. In March of 2009, a certain employee of the District allegedly accused Plaintiff of sexual harassment.

    A. On March 17, 2009, Carolyn Smiley, the secretary of the technology department complained to Dr. Kimako Patterson, Assistant Superintendent

-4-

for Curriculum that she was sexually harassed by the Plaintiff. She also alleged that she made similar complaints against the Plaintiff in 2004 and 2008.

B. On April 29, 2009, Plaintiff was placed on a paid administrative as a result of SMILEY's complaint of sexual harassment.

24. Certain employees of PRAIRIE-HILLS joined the bandwagon and made similar complaints against Plaintiff subsequent to Ms. Smiley's complaint. The core of their complaints was similar - that Plaintiff made comments of sexual nature to them.

A. MCWILLIAMS alleged that from 2004 to sometime in 2007, Plaintiff made offensive sexual remarks to her.

B. JORDEN alleged that Plaintiff made offensive comments of sexual nature to her in February and March of 2009 while she was pregnant.

C. PATTERSON also alleged that Plaintiff stated to her sometime in 2008 that she was cute, intelligent, and had a big butt.

25. On March 25, 2009, an Investigative Team was instituted and convened to investigate these allegations.

26. The members of the investigative team were Dr. Patterson and the District attorneys, ROBERT E. RILEY and CAMILLE CRIBARO-MELLE [hereinafter, "CARIBARO-MELLE"].

27. The Investigative Team interviewed select witnesses and concluded surreptitiously that I committed the sexual harassment conduct as alleged by the complainants.

28. Plaintiff unequivocally and categorically denied all these allegations.

29. On April 23, 2009 and in a letter addressed to the Plaintiff, FOSTER advised the Plaintiff that he recommended to the Board not to renew Plaintiff's employment contract based on the allegations of sexual harassment against me. A copy of Dr. Foster's letter marked Exhibit "C" is attached hereto and made a part of this Complaint hereof.

30. On April 29, 2009, in a letter addressed to the Plaintiff through his attorney, the Board of Education through its attorney, CRIBARO-MELLE, advised the Plaintiff that it would not renew the Plaintiff's employment contract.

31. Specifically, the BOARD OF EDUCATION stated that it has determined not to reemploy the Plaintiff after the employment contract ended on June 30, 2009.

32. On June 20, 2008, FOSTER carried out a comprehensive evaluation of the Plaintiff's performance in Plaintiff's job as the Director of Information Systems at the District and the overall performance rating given by him to the Plaintiff was outstanding.

33. Plaintiff's job performance with PRAIRIE-HILLS from the summer of 2004 to April 29, 2009 have been satisfactory.

34. PRAIRIE-HILLS' determination not to reemploy the Plaintiff after the employment contract ended on June 30, 2009 was inconsistent with the Plaintiff's job performance which was rated as outstanding by FOSTER.

35. PRAIRIE-HILLS' decision not to reemploy the Plaintiff after the employment contract ended on June 30, 2009 was inconsistent and a violation of the State of Illinois School Code which requires that senior school personnel on a twelve (12) months'

contract must be informed if their contract was not being renewed for another year by the month of February of each year or within 45 days before the end of the employment contract.

36.     PRAIRIE-HILLS failed to adopt FOSTER's recommendation and did not terminate Plaintiff's employment for cause because there was no evidence in the alleged sexual harassment charges to sustain or justify a cause-based termination.

37.     The *raison d'etre* for FOSTER's recommendation for the termination of Plaintiff's employment - the sexual harassment charges - was inapposite to the BOARD OF EDUCATION 's discreet determination not to reemploy or renew the Plaintiff's contract after it had lapsed on June 30, 2009.

38.     The BOARD OF EDUCATION's decision not to reemploy the Plaintiff after the employment contract ended on June 30, 2009 was pretextual in that it was not based on the Plaintiff's job performance but on some phantom and trumped-up sexual harassment charges for the following reasons:

A.     None of the allegations of sexual harassment by PATTERSON, MCWILLIAMS, SMILEY and JORDEN were in writing contemporaneous to the occurrence of these alleged sexual harassment.

B.     All the written statements on the sexual harassment charges by MCWILLIAMS, SMILEY and JORDEN occurred in March 2009 subsequent to the sexual harassment charge by SMILEY in March 2009. They were requested and coordinated by the Investigative Team led by PATTERSON and came well after the fact.

C.     None of the sexual harassment charges were recorded in the personnel files of either PATTERSON, MCWILLIAMS, SMILEY and JORDEN prior to SMILEY's alleged complaint of sexual harassment of March 2009.

D.     None of the sexual harassment charges were ever recorded in the Plaintiff's personnel file prior to SMILEY's alleged complaint of sexual harassment of March 2009.

E.     None of the sexual harassment charges were based on substantive evidence other than hearsay statements of cooperative and coached select employees of PRAIRIE-HILLS who gave phantom corroborating stories after SMILEY lodged her charges in March 2009.

F.     The star witnesses - DAVID WALKER, SYLVIA DAVIS, FRANCESCA GUNTERSPERGEN, YVETTE BLACK, and MALLORY KELLY - have given only phantom and whimsical statements based on hearsay as opposed to direct eye witness accounts.

G.     All these witnesses were a part of the conspiracy who intentionally engineered the charges of sexual harassment in order to have the Plaintiff terminated from his position as the Director of Information Systems at PRAIRIE-HILLS.

H.     MCWILLIAMS with the assistance of MAYBELL purposefully set the Plaintiff up to be charged with sexual harassment in order to have the Plaintiff terminated because MAYBELL wanted MCWILLIAMS to have the Plaintiff's job.   This claim was corroborated by KATHY TAYLOR, another former

-8-

member of the Board. It was corroborated by MRS. GILES. Other board members equally advised the Plaintiff to watch his back because he would be set up for sexual harassment charges.

I. None of the employees including PATTERSON who brought sexual harassment charges have filed any complaint with the EEOC or the Illinois Department of Human Rights against the Plaintiff or PRAIRIE-HILLS for their alleged sexual harassment or inappropriate sexual comments that they leveled against the Plaintiff.

J. PATTERSON, a leading member of the Investigative Team and one of the complainants against the Plaintiff, had a motive to have the Plaintiff terminated because she was interested in the Plaintiff's position.

K. PATTERSON who complained that Plaintiff sexually harassed her was appointed to the Investigative Team to investigate the allegations of sexual harassment against the Plaintiff including her own charges against the Plaintiff, thus creating a heightened severe conflict of interest in this outcome determinative investigation of baseless sexual harassment charges.

L. No sooner was the Plaintiff terminated that PATTERSON was appointed and stepped in to fill the Plaintiff's position as the Director of Information Systems at PRAIRIE-HILLS with an added pay in addition to her job of Assistant Superintendent of Curriculum.

M. It is ironic and highly suspicious that DR. TODD COVAULT [hereinafter, "COVAULT"], the Director of Business Affairs and Human Resources, was

not appointed to be a member of or lead the Investigative Team. DR. PATRICIA MOORE, the Supervisor of Human Resources and Transportation and COVAULT's Assistant, who is the Supervisor of Human Resources was not also appointed to be a member of the Investigative Team.

N.  MCWILLIAMS was very confrontational and angry in her relationship with the Plaintiff on the job and was written up several times for her insubordination and tardiness. Her trumped-up sexual harassment charge was in retaliation for being written up by the Plaintiff.

O.  SMILEY was inefficient and feared that the Plaintiff would be replacing her because she did not have a college degree. Her charge of sexual harassment was a retaliation against the Plaintiff because she was always afraid of being fired since she did not have a degree and because the Plaintiff refused to promote her to a PC technician.

P.  In 2005/2006 school year when Richard Williams left, the Plaintiff refused to hire DION WILEY [hereinafter, "WILEY"] to his position of Software Specialist. SMILEY and MCWILLIAMS had lobbied the Plaintiff to hire WILEY [SMILEY's boyfriend] which the Plaintiff declined to do.

Q.  Throughout 2004 through 2005 school year, the Plaintiff did not meet with MR. LAPORTE to discuss any sexual harassment case against the Plaintiff nor was the Plaintiff aware of any charges that were filed against the Plaintiff. In 2005/2006 school year, FOSTER said to the Plaintiff that he had some sexual complaints about the Plaintiff. Plaintiff asked him as to the identity of

the person(s) who made the complaints, he said it was not necessary to tell the Plaintiff since it was unfounded after he had already looked into it. FOSTER advised the Plaintiff to be careful.

R. The decision of the Investigative Team was outcome determinative for the following reasons:

    i. in the manner in which the Investigative Team conducted its interviews with select witnesses whose opinions were favorable vis-a-vis other witnesses with apposite and contradictory statements;

    ii. In that PATTERSON who had an interest in the Plaintiff's position as the Director of Information Systems for the District had made a bogus complaint of sexual harassment against the Plaintiff in order to have the Plaintiff terminated; and

    iii. In that PATTERSON was appointed and served as a leading member of the Investigative Team that investigated her own claims of sexual harassment and the claims of other complainants against the Plaintiff.

S. Plaintiff's performance as the Director of Information Systems at PRAIRIE-HILLS had been stellar and full of unsurpassed accomplishments as follows:

    i. Within the first year, the Plaintiff laid the foundation for a new and better technology and technology department that was both staff, student and professional development focused. The Board rewarded the Plaintiff by redefining his position as the Director of Information Systems.

ii.    Plaintiff redesigned the network and laid the foundation for a modern technology infrastructure. In 2008, the Plaintiff was able to implement an infrastructure that was super highway.

iii.    Plaintiff replaced all the equipment with modern and efficient ones by reallocating the resources PRAIRIE-HILLS had through the Consortium and District fund while laying the foundation for e-rate grant.

iv.    Plaintiff replaced the analog ancient telephone system with voice over internet protocol system (modern, digital, efficient, scalable, inexpensive).  Every employee now has a physical phone and an extension.

v.    Plaintiff replaced the email system with a modern efficient, inexpensive, scalable system by replacing the old Novell system. Every employee now has a working email address.

vi.    Plaintiff consolidated the phone bills to a half of what PRAIRIE-HILLS used to pay with a modern tweak.

vii.    Since the Plaintiff's arrival, PRAIRIE-HILLS has benefitted in over $4m e-rate money.  The current year 2008/2009 was $3.5 million. Plaintiff had already laid the foundation to get over $2 million for the next school year, 2009/2010.

viii.    Plaintiff designed and implemented a wireless local area network (LAN) infrastructure for the whole district.  Plaintiff also designed and

-12-

implemented a wireless wide area network (WWAN or MAN - Metropolitan Area Network) to cover all towns (Markham, Hazel Crest, Oak Forest and Country Club Hills) where our schools are located.

ix.    In the overall, Plaintiff installed a technology infrastructure in the District that was far superior to any other similar academic elementary institution in the area.

39.    Plaintiff was discriminated against because of his national origin, constructively and wrongfully discharged in breach of his contract by the BOARD OF EDUCATION's non-renewal of his contract of employment upon expiration; constructively and wrongfully discharged in violation of the Illinois School Code; wrongfully charged with sexual harassment without justification which constituted libel, slander and defamation to his character; and wrongfully charged with sexual harassment without justification which constituted false light invasion of his privacy.

40.    The hostile work environment created by PRAIRIE-HILLS caused Plaintiff to have severe headaches, stress, anxiety, emotional distress, restlessness, fatigue, irritability, insomnia, and situational depression for which Plaintiff is under medical treatment.

41.    Plaintiff sought medical treatment from ANJUM HAEMADDUDIN, M.D., his primary care physician.

42.    DR. HAEMADDUDIN diagnosed Plaintiff as presenting generalized anxiety disorders and concluded that her analysis revealed that the elevations of Plaintiff's generalized anxiety disorders are related to stressful incidents at work.

-13-

**COUNT I**
**TITLE VII**
**NATIONAL ORIGIN DISCRIMINATION**

43.   The Plaintiff adopts and incorporates by reference the allegations contained in paragraphs 14-42 of the complaint.

44.   The Plaintiff, WALE ADE-OSHIFOGUN, has been subjected to different treatment on the basis of his national origin, Nigerian.

45.   The claim is brought under Title VII, 42 U.S.C. §2000e et seq.

46.   Plaintiff's performance was as good as that of PATTERSON [US Citizen] who is still employed by PRAIRIE-HILLS.

47.   On April 23, 2009 and in a letter addressed to the Plaintiff, FOSTER advised the Plaintiff that he recommended to the Board not to renew Plaintiff's employment contract based on the allegations of sexual harassment against me. See a copy of Dr. Foster's letter marked Exhibit "D" hereto.

48.   On April 29, 2009, in a letter addressed to the Plaintiff through his attorney, the Board of Education through its attorney, CRIBARO-MELLE, advised the Plaintiff that it would not renew the Plaintiff's employment contract.

49.   Specifically, the BOARD OF EDUCATION stated that it has determined not to reemploy the Plaintiff after the employment contract ended on June 30, 2009.

50.   On June 20, 2008, FOSTER carried out a comprehensive evaluation of the Plaintiff's performance in Plaintiff's job as the Director of Information Systems at the District and the overall performance rating given by him to the Plaintiff was outstanding.

-14-

51.     Plaintiff's job performance with PRAIRIE-HILLS from the summer of 2004 to April 29, 2009 had been satisfactory.

52.     PRAIRIE-HILLS' determination not to reemploy the Plaintiff after the employment contract ended on June 30, 2009 was inconsistent with the Plaintiff's job performance which was rated as outstanding by FOSTER.

53.     PRAIRIE-HILLS' decision not to reemploy the Plaintiff after the employment contract ended on June 30, 2009 was inconsistent and a violation of the State of Illinois School Code which requires that senior school personnel on a twelve (12) months' contract must be informed if their contract was not being renewed for another year by the month of February of each year or within 45 days before the end of the employment contract.

54.     PRAIRIE-HILLS failed to adopt FOSTER's recommendation and did not terminate Plaintiff's employment for cause because there was no evidence in the alleged sexual harassment charges to sustain or justify a cause-based termination.

55.     The *raison d'etre* for FOSTER's recommendation for the termination of Plaintiff's employment - the sexual harassment charges - was inapposite to the BOARD OF EDUCATION's discreet determination not to reemploy or renew the Plaintiff's contract after it had lapsed on June 30, 2009.

56.     The BOARD OF EDUCATION's decision not to reemploy the Plaintiff after the employment contract ended on June 30, 2009 was pretextual in that it was not based on the Plaintiff's job performance but on some phantom and trumped-up sexual harassment charges.

-15-

57.    None of the employees including PATTERSON [US Citizen] who brought sexual harassment charges have filed any complaint with the EEOC or the Illinois Department of Human Rights against the Plaintiff or PRAIRIE-HILLS for their alleged sexual harassment or inappropriate sexual comments that they leveled against the Plaintiff.

58.    PATTERSON, [US Citizen], a leading member of the Investigative Team and one of the complainants against the Plaintiff, had a motive to have the Plaintiff terminated because she was interested in the Plaintiff's position.

59.    PATTERSON, [US Citizen], who complained that Plaintiff sexually harassed her was appointed to the Investigative Team to investigate the allegations of sexual harassment against the Plaintiff including her own charges against the Plaintiff, thus creating a heightened severe conflict of interest in this outcome determinative investigation of baseless sexual harassment charges.

60.    No sooner was the Plaintiff terminated that PATTERSON [US Citizen] was appointed and stepped in to fill the Plaintiff's position as the Director of Information Systems at PRAIRIE-HILLS with an added pay in addition to her job of Assistant Superintendent of Curriculum.

61.    It is ironic and highly suspicious that COVAULT, the Director of Business Affairs and Human Resources, was not appointed to be a member of or lead the Investigative Team.  MOORE, the Supervisor of Human Resources and Transportation and COVAULT's Assistant, who is the Supervisor of Human Resources was not also appointed to be a member of the Investigative Team.

62. The decision of the Investigative Team was outcome determinative for the following reasons:

A. in the manner in which the Investigative Team conducted its interviews with select witnesses whose opinions were favorable vis-a-vis other witnesses with apposite and contradictory statements;

B. In that PATTERSON [US Citizen] who had an interest in the Plaintiff's position as the Director of Information Systems for the District had made a bogus complaint of sexual harassment against the Plaintiff in order to have the Plaintiff terminated; and

C. In that PATTERSON [US Citizen] was appointed and served as a leading member of the Investigative Team that investigated her own claims of sexual harassment and the claims of other complainants against the Plaintiff.

63. Plaintiff's performance as the Director of Information Systems at PRAIRIE-HILLS had been stellar and full of unsurpassed accomplishments as follows:

i. Within the first year, the Plaintiff laid the foundation for a new and better technology and technology department that was both staff, student and professional development focused. The Board rewarded the Plaintiff by redefining his position as the Director of Information Systems.

ii. Plaintiff redesigned the network and laid the foundation for a modern technology infrastructure. In 2008, the Plaintiff was able to implement an infrastructure that was super highway.

iii. Plaintiff replaced all the equipment with modern and efficient ones by

reallocating the resources PRAIRIE-HILLS had through the Consortium and District fund while laying the foundation for e-rate grant.

iv.   Plaintiff replaced the analog ancient telephone system with voice over internet protocol system (modern, digital, efficient, scalable, inexpensive). Every employee now has a physical phone and an extension.

v.   Plaintiff replaced the email system with a modern efficient, inexpensive, scalable system by replacing the old Novell system.  Every employee now has a working email address.

vi.   Plaintiff consolidated the phone bills to a half of what PRAIRIE-HILLS used to pay with a modern tweak.

vii.   Since the Plaintiff's arrival, PRAIRIE-HILLS has benefitted in over $4m e-rate money.  The current year 2008/2009 was $3.5 million.  Plaintiff had already laid the foundation to get over $2 million for the next school year, 2009/2010.

viii.   Plaintiff designed and implemented a wireless local area network (LAN) infrastructure for the whole district.  Plaintiff also designed and implemented a wireless wide area network (WWAN or MAN - Metropolitan Area Network) to cover all towns (Markham, Hazel Crest, Oak Forest and Country Club Hills) where our schools are located.

ix.   In the overall, Plaintiff installed a technology infrastructure in the District that was far superior to any other similar academic elementary institution in the area.

64.     Plaintiff's performance was as good as that of PATTERSON [US Citizen] who was granted tenure and promotion.

WHEREFORE, for the foregoing reasons, the Plaintiff, WALE ADE-OSHIFOGUN, respectfully requests that this court provide the following equitable and monetary relief:

a.      Advance this case on the docket, order a speedy hearing at the earliest practical book date and cause this case to be expedited in every possible way;

b.      Order a permanent injunction prohibiting the Defendant, PRAIRIE-HILLS ELEMENTARY SCHOOL DISTRICT #144, from further acts of discrimination and harassment;

c.      Order that the Defendant, PRAIRIE-HILLS ELEMENTARY SCHOOL DISTRICT #144, reinstate the Plaintiff to his position as the Director of Information Systems;

d.      Award back pay, future earnings and reimbursement for income and fringe benefits to the present with applicable statutory interest;

e.      Award the costs of litigation including reasonable attorneys' fees and expert witness fees and expenses;

f.      Award judgment for compensatory damages;

g.      Award punitive damages;

h.      Enter an order requiring the Defendants to implement effective steps to eliminate and remediate race discrimination from the Defendant's organization;

i.      Grant such other relief as the Court deems equitable and just.

**COUNT II**
**BREACH OF CONTRACT**

65. The Plaintiff adopts and incorporates by reference the allegations contained in paragraphs 14-42 and 43-64 of the Complaint.

66. On April 23, 2009 and in a letter addressed to the Plaintiff, FOSTER advised the Plaintiff that he recommended to the Board not to renew Plaintiff's employment contract based on the allegations of sexual harassment against me. See a copy of Dr. Foster's letter marked Exhibit "C" hereto.

67. On April 29, 2009, in a letter addressed to the Plaintiff through his attorney, the Board of Education through its attorney, CRIBARO-MELLE, advised the Plaintiff that it would not renew the Plaintiff's employment contract.

68. Specifically, the BOARD OF EDUCATION stated that it has determined not to reemploy the Plaintiff after the employment contract ended on June 30, 2009.

69. On June 20, 2008, FOSTER carried out a comprehensive evaluation of the Plaintiff's performance in Plaintiff's job as the Director of Information Systems at the District and the overall performance rating given by him to the Plaintiff was outstanding.

70. Plaintiff's job performance with PRAIRIE-HILLS from the summer of 2004 to April 29, 2009 had been satisfactory.

71. PRAIRIE-HILLS' determination not to reemploy the Plaintiff after the employment contract ended on June 30, 2009 was inconsistent with the Plaintiff's job performance which was rated as outstanding by FOSTER.

72.     PRAIRIE-HILLS' decision not to reemploy the Plaintiff after the employment contract ended on June 30, 2009 was inconsistent and a violation of the State of Illinois School Code which requires that senior school personnel on a twelve (12) months' contract must be informed if their contract was not being renewed for another year by the month of February of each year or within 45 days before the end of the employment contract.

73.     PRAIRIE-HILLS failed to adopt FOSTER's recommendation and did not terminate Plaintiff's employment for cause because there was no evidence in the alleged sexual harassment charges to sustain or justify a cause-based termination.

74.     The *raison d'etre* for FOSTER's recommendation for the termination of Plaintiff's employment - the sexual harassment charges - was inapposite to the BOARD OF EDUCATION's discreet determination not to reemploy or renew the Plaintiff's contract after it had lapsed on June 30, 2009.

75.     The BOARD OF EDUCATION's decision not to reemploy the Plaintiff after the employment contract ended on June 30, 2009 was pretextual in that it was not based on the Plaintiff's job performance but on some phantom and trumped-up sexual harassment charges.

76.     None of the employees including PATTERSON who brought sexual harassment charges have filed any complaint with the EEOC or the Illinois Department of Human Rights against the Plaintiff or PRAIRIE-HILLS for their alleged sexual harassment or inappropriate sexual comments that they leveled against the Plaintiff.

77.     PATTERSON, a leading member of the Investigative Team and one of the

complainants against the Plaintiff, had a motive to have the Plaintiff terminated because she was interested in the Plaintiff's position.

78.   PATTERSON, who complained that Plaintiff sexually harassed her, was appointed to the Investigative Team to investigate the allegations of sexual harassment against the Plaintiff including her own charges against the Plaintiff, thus creating a heightened severe conflict of interest in this outcome determinative investigation of baseless sexual harassment charges.

79.   No sooner was the Plaintiff terminated that PATTERSON was appointed and stepped in to fill the Plaintiff's position as the Director of Information Systems at PRAIRIE-HILLS with an added pay in addition to her job of Assistant Superintendent of Curriculum.

80.   It is ironic and highly suspicious that COVAULT, the Director of Business Affairs and Human Resources, was not appointed to be a member of or lead the Investigative Team.   MOORE, the Supervisor of Human Resources and Transportation and COVAULT's Assistant, who is the Supervisor of Human Resources was not also appointed to be a member of the Investigative Team.

81.   The decision of the Investigative Team was outcome determinative for the following reasons:

A.   in the manner in which the Investigative Team conducted its interviews with select witnesses whose opinions were favorable vis-a-vis other witnesses with apposite and contradictory statements;

B.   In that PATTERSON who had an interest in the Plaintiff's position as the

Director of Information Systems for the District had made a bogus complaint of sexual harassment against the Plaintiff in order to have the Plaintiff terminated; and

C.  In that PATTERSON was appointed and served as a leading member of the Investigative Team that investigated her own claims of sexual harassment and the claims of other complainants against the Plaintiff.

82.  Plaintiff's performance as the Director of Information Systems at PRAIRIE-HILLS had been stellar and full of unsurpassed accomplishments as follows:

i.  Within the first year, the Plaintiff laid the foundation for a new and better technology and technology department that was both staff, student and professional development focused. The Board rewarded the Plaintiff by redefining his position as the Director of Information Systems.

ii.  Plaintiff redesigned the network and laid the foundation for a modern technology infrastructure. In 2008, the Plaintiff was able to implement an infrastructure that was super highway.

iii.  Plaintiff replaced all the equipment with modern and efficient ones by reallocating the resources PRAIRIE-HILLS had through the Consortium and District fund while laying the foundation for e-rate grant.

iv.  Plaintiff replaced the analog ancient telephone system with voice over internet protocol system (modern, digital, efficient, scalable, inexpensive). Every employee now has a physical phone and an extension.

v.  Plaintiff replaced the email system with a modern efficient, inexpensive,

scalable system by replacing the old Novell system.  Every employee now has a working email address.

vi.    Plaintiff consolidated the phone bills to a half of what PRAIRIE-HILLS used to pay with a modern tweak.

vii.   Since the Plaintiff's arrival, PRAIRIE-HILLS has benefitted in over $4m e-rate money.  The current year 2008/2009 was $3.5 million.  Plaintiff had already laid the foundation to get over $2 million for the next school year, 2009/2010.

viii.  Plaintiff designed and implemented a wireless local area network (LAN) infrastructure for the whole district.  Plaintiff also designed and implemented a wireless wide area network (WWAN or MAN - Metropolitan Area Network) to cover all towns (Markham, Hazel Crest, Oak Forest and Country Club Hills) where our schools are located.

ix.    In the overall, Plaintiff installed a technology infrastructure in the District that was far superior to any other similar academic elementary institution in the area.

83.    Plaintiff was hired as a Manager of Information Systems and promoted to the Director of Information Systems.

84.    Prairie-Hills School District breached the terms of Plaintiff's employment when it decided not reemploy him after the employment contract ended on June 30, 2009 because it was inconsistent with Plaintiff's job performance which was rated as outstanding by FOSTER; because it was a violation of the State of Illinois School Code which requires that senior school personnel on a twelve (12) months' contract

must be informed if their contract was not being renewed for another year by the month of February of each year or within 45 days before the end of the employment contract; and because it was based on the allegations of unfounded and unproven sexual harassment against the Plaintiff lacking any substantive evidence.

WHEREFORE, for the foregoing reasons, the Plaintiff, WALE ADE-OSHIFOGUN, respectfully requests that this court provide the following equitable and monetary relief:

a.     Advance this case on the docket, order a speedy hearing at the earliest practical book date and cause this case to be expedited in every possible way;

b.     Order a permanent injunction prohibiting the Defendant,  PRAIRIE-HILLS ELEMENTARY SCHOOL DISTRICT #144, from further acts of discrimination and harassment;

c.     Order that the Defendant,  PRAIRIE-HILLS ELEMENTARY SCHOOL DISTRICT #144, reinstate Plaintiff to his position as the Director of Information Systems;

d.     Award back pay, future earnings and reimbursement for income and fringe benefits to the present with applicable statutory interest;

e.     Award the costs of litigation including reasonable attorneys' fees and expert witness fees and expenses;

f.     Award judgment for compensatory damages;

g.     Award punitive damages;

h.     Enter an order requiring the Defendants to implement effective steps to eliminate and remediate race discrimination from the Defendant's organization;

i.     Grant such other relief as the Court deems equitable and just.

**COUNT III**
**WRONGFUL DISCHARGE**

85. The Plaintiff adopts and incorporates by reference the allegations contained in paragraphs 14-42, 43-64 and 65-84 of the Complaint.

86. On April 23, 2009 and in a letter addressed to the Plaintiff, FOSTER advised the Plaintiff that he recommended to the Board not to renew Plaintiff's employment contract based on the allegations of sexual harassment against me. See a copy of Dr. Foster's letter marked Exhibit "D" hereto.

87. On April 29, 2009, in a letter addressed to the Plaintiff through his attorney, the Board of Education through its attorney, CRIBARO-MELLE, advised the Plaintiff that it would not renew the Plaintiff's employment contract.

88. Specifically, the BOARD OF EDUCATION stated that it has determined not to reemploy the Plaintiff after the employment contract ended on June 30, 2009.

89. On June 20, 2008, FOSTER carried out a comprehensive evaluation of the Plaintiff's performance in Plaintiff's job as the Director of Information Systems at the District and the overall performance rating given by him to the Plaintiff was outstanding.

90. Plaintiff's job performance with PRAIRIE-HILLS from the summer of 2004 to April 29, 2009 had been satisfactory.

91. PRAIRIE-HILLS' determination not to reemploy the Plaintiff after the employment contract ended on June 30, 2009 was inconsistent with the Plaintiff's job performance which was rated as outstanding by FOSTER.

92. PRAIRIE-HILLS' decision not to reemploy the Plaintiff after the employment contract ended on June 30, 2009 was inconsistent and a violation of the State of Illinois School Code which requires that senior school personnel on a twelve (12) months' contract must be informed if their contract was not being renewed for another year by the month of February of each year or within 45 days before the end of the employment contract.

93. PRAIRIE-HILLS failed to adopt FOSTER's recommendation and did not terminate Plaintiff's employment for cause because there was no evidence in the alleged sexual harassment charges to sustain or justify a cause-based termination.

94. The *raison d'etre* for FOSTER's recommendation for the termination of Plaintiff's employment - the sexual harassment charges - was inapposite to the BOARD OF EDUCATION's discreet determination not to reemploy or renew the Plaintiff's contract after it had lapsed on June 30, 2009.

95. The BOARD OF EDUCATION's decision not to reemploy the Plaintiff after the employment contract ended on June 30, 2009 was pretextual in that it was not based on the Plaintiff's job performance but on some phantom and trumped-up sexual harassment charges.

96. None of the employees including PATTERSON [US Citizen] who brought sexual harassment charges have filed any complaint with the EEOC or the Illinois Department of Human Rights against the Plaintiff or PRAIRIE-HILLS for their alleged sexual harassment or inappropriate sexual comments that they leveled against the Plaintiff.

-27-

97. PATTERSON, a leading member of the Investigative Team and one of the complainants against the Plaintiff, had a motive to have the Plaintiff terminated because she was interested in the Plaintiff's position.

98. PATTERSON, who complained that Plaintiff sexually harassed her, was appointed to the Investigative Team to investigate the allegations of sexual harassment against the Plaintiff including her own charges against the Plaintiff, thus creating a heightened severe conflict of interest in this outcome determinative investigation of baseless sexual harassment charges.

99. No sooner was the Plaintiff terminated that PATTERSON was appointed and stepped in to fill the Plaintiff's position as the Director of Information Systems at PRAIRIE-HILLS with an added pay in addition to her job of Assistant Superintendent of Curriculum.

100. It is ironic and highly suspicious that COVAULT, the Director of Business Affairs and Human Resources, was not appointed to be a member of or lead the Investigative Team. MOORE, the Supervisor of Human Resources and Transportation and COVAULT's Assistant, who is the Supervisor of Human Resources was not also appointed to be a member of the Investigative Team.

101. The decision of the Investigative Team was outcome determinative for the following reasons:

    A. in the manner in which the Investigative Team conducted its interviews with select witnesses whose opinions were favorable vis-a-vis other witnesses with apposite and contradictory statements;

B.      In that PATTERSON who had an interest in the Plaintiff's position as the Director of Information Systems for the District had made a bogus complaint of sexual harassment against the Plaintiff in order to have the Plaintiff terminated; and

C.      In that PATTERSON was appointed and served as a leading member of the Investigative Team that investigated her own claims of sexual harassment and the claims of other complainants against the Plaintiff.

102.    Plaintiff's performance as the Director of Information Systems at PRAIRIE-HILLS had been stellar and full of unsurpassed accomplishments as follows:

i.      Within the first year, the Plaintiff laid the foundation for a new and better technology and technology department that was both staff, student and professional development focused.  The Board  rewarded the Plaintiff by redefining his position as the Director of Information Systems.

ii.     Plaintiff redesigned the network and laid the foundation for a modern technology infrastructure. In 2008, the Plaintiff was able to implement an infrastructure that was super highway.

iii.    Plaintiff replaced all the equipment with modern and efficient ones by reallocating the resources PRAIRIE-HILLS had through the Consortium and District fund while laying the foundation for e-rate grant.

iv.     Plaintiff replaced the analog ancient telephone system with voice over internet protocol system (modern, digital, efficient, scalable, inexpensive). Every employee now has a physical phone and an extension.

-29-

v.  Plaintiff replaced the email system with a modern efficient, inexpensive, scalable system by replacing the old Novell system.  Every employee now has a working email address.

vi.  Plaintiff consolidated the phone bills to a half of what PRAIRIE-HILLS used to pay with a modern tweak.

vii.  Since the Plaintiff's arrival, PRAIRIE-HILLS has benefitted in over $4m e-rate money.  The current year 2008/2009 was $3.5 million.  Plaintiff had already laid the foundation to get over $2 million for the next school year, 2009/2010.

viii.  Plaintiff designed and implemented a wireless local area network (LAN) infrastructure for the whole district.  Plaintiff also designed and implemented a wireless wide area network (WWAN or MAN - Metropolitan Area Network) to cover all towns (Markham, Hazel Crest, Oak Forest and Country Club Hills) where our schools are located.

ix.  In the overall, Plaintiff installed a technology infrastructure in the District that was far superior to any other similar academic elementary institution in the area.

103.  Plaintiff was hired as a Manager of Information Systems and promoted to the Director of Information Systems.

104.  Prairie-Hills School District breached the terms of Plaintiff's employment when it decided not reemploy him after the employment contract ended on June 30, 2009 because it was inconsistent with Plaintiff's job performance which was rated as outstanding by FOSTER; because it was a violation of the State of Illinois School

Code which requires that senior school personnel on a twelve (12) months' contract must be informed if their contract was not being renewed for another year by the month of February of each year or within 45 days before the end of the employment contract; and because it was based on the allegations of unfounded and unproven sexual harassment against the Plaintiff lacking any substantive evidence.

WHEREFORE, for the foregoing reasons, the Plaintiff, WALE ADE-OSHIFOGUN, respectfully requests that this court provide the following equitable and monetary relief:

a.      Advance this case on the docket, order a speedy hearing at the earliest practical book date and cause this case to be expedited in every possible way;

b.      Order a permanent injunction prohibiting the Defendant, PRAIRIE-HILLS ELEMENTARY SCHOOL DISTRICT #144, from further acts of discrimination and harassment;

c.      Order that the Defendant, PRAIRIE-HILLS ELEMENTARY SCHOOL DISTRICT #144, reinstate Plaintiff to his position as the Director of Information Systems;

d.      Award back pay, future earnings and reimbursement for income and fringe benefits to the present with applicable statutory interest;

e.      Award the costs of litigation including reasonable attorneys' fees and expert witness fees and expenses;

f.      Award judgment for compensatory damages;

g.      Award punitive damages;

h.      Enter an order requiring the Defendants to implement effective steps to eliminate and remediate race discrimination from the Defendant's organization;

i.     Grant such other relief as the Court deems equitable and just.

WHEREFORE, for the foregoing reasons, the Plaintiff, WALE ADE-OSHIFOGUN, respectfully requests that this court provide the following equitable and monetary relief:

a.     Advance this case on the docket, order a speedy hearing at the earliest practical book date and cause this case to be expedited in every possible way;

b.     Order a permanent injunction prohibiting the Defendant, PRAIRIE-HILLS ELEMENTARY SCHOOL DISTRICT #144, from further acts of discrimination and harassment;

c.     Order that the Defendant, PRAIRIE-HILLS ELEMENTARY SCHOOL DISTRICT #144, reinstate Plaintiff to his position as the Director of Information Systems;

d.     Award back pay, future earnings and reimbursement for income and fringe benefits to the present with applicable statutory interest;

e.     Award the costs of litigation including reasonable attorneys' fees and expert witness fees and expenses;

f.     Award judgment for compensatory damages;

g.     Award punitive damages;

h.     Enter an order requiring the Defendants to implement effective steps to eliminate and remediate race discrimination from the Defendant's organization;

i.     Grant such other relief as the Court deems equitable and just.

## COUNT IV
## DEFAMATION

105.   The Plaintiff adopts and incorporates by reference the allegations contained in

paragraphs 14-42, 43-64, 65-84 and 85-105 of the Complaint.

106. In March of 2009, a certain employee of the District allegedly accused Plaintiff of sexual harassment.

   A. On March 17, 2009, Carolyn Smiley, the secretary of the technology department complained to Dr. Kimako Patterson, Assistant Superintendent for Curriculum that she was sexually harassed by the Plaintiff. She also alleged that she made similar complaints against the Plaintiff in 2004 and 2008.

   B. On April 29, 2009, Plaintiff was placed on a paid administrative as a result of SMILEY's complaint of sexual harassment.

107. Certain employees of PRAIRIE-HILLS joined the bandwagon and made similar complaints against Plaintiff subsequent to Ms. Smiley's complaint. The core of their complaints was similar - that Plaintiff made comments of sexual nature to them.

   A. MCWILLIAMS alleged that from 2004 to sometime in 2007, Plaintiff made offensive sexual remarks to her.

   B. JORDEN alleged that Plaintiff made offensive comments of sexual nature to her in February and March of 2009 while she was pregnant.

   C. PATTERSON also alleged that Plaintiff stated to her sometime in 2008 that she was cute, intelligent, and had a big butt.

108. On March 25, 2009, an Investigative Team was instituted and convened to investigate these allegations.

109. The members of the investigative team were Dr. Patterson and the District

attorneys, ROBERT E. RILEY and CAMILLE CRIBARO-MELLE [hereinafter, "CARIBARO-MELLE"].

110.   The Investigative Team interviewed select witnesses and concluded surreptitiously that I committed the sexual harassment conduct as alleged by the complainants.

111.   Plaintiff unequivocally and categorically denied all these allegations.

112.   On April 23, 2009 and in a letter addressed to the Plaintiff, FOSTER advised the Plaintiff that he recommended to the Board not to renew Plaintiff's employment contract based on the allegations of sexual harassment against me.  See a copy of Dr. Foster's letter marked Exhibit "C" hereto.

113.   On April 29, 2009, in a letter addressed to the Plaintiff through his attorney, the Board of Education through its attorney, CRIBARO-MELLE, advised the Plaintiff that it would not renew the Plaintiff's employment contract.

114.   Specifically, the BOARD OF EDUCATION stated that it has determined not to reemploy the Plaintiff after the employment contract ended on June 30, 2009.

115.   On June 20, 2008, FOSTER carried out a comprehensive evaluation of the Plaintiff's performance in Plaintiff's job as the Director of Information Systems at the District and the overall performance rating given by him to the Plaintiff was outstanding.

116.   Plaintiff's job performance with PRAIRIE-HILLS from the summer of 2004 to April 29, 2009 have been satisfactory.

117.   PRAIRIE-HILLS' determination not to reemploy the Plaintiff after the employment contract ended on June 30, 2009 was inconsistent with the Plaintiff's job

-34-

performance which was rated as outstanding by FOSTER.

118.    PRAIRIE-HILLS' decision not to reemploy the Plaintiff after the employment contract ended on June 30, 2009 was inconsistent and a violation of the State of Illinois School Code which requires that senior school personnel on a twelve (12) months' contract must be informed if their contract was not being renewed for another year by the month of February of each year or within 45 days before the end of the employment contract.

119.    PRAIRIE-HILLS failed to adopt FOSTER's recommendation and did not terminate Plaintiff's employment for cause because there was no evidence in the alleged sexual harassment charges to sustain or justify a cause-based termination.

120.    The *raison d'etre* for FOSTER's recommendation for the termination of Plaintiff's employment - the sexual harassment charges - was inapposite to the BOARD OF EDUCATION 's discreet determination not to reemploy or renew the Plaintiff's contract after it had lapsed on June 30, 2009.

121.    The BOARD OF EDUCATION's decision not to reemploy the Plaintiff after the employment contract ended on June 30, 2009 was pretextual in that it was not based on the Plaintiff's job performance but on some phantom and trumped-up sexual harassment charges for the following reasons:

    A.    None of the allegations of sexual harassment by PATTERSON, MCWILLIAMS, SMILEY and JORDEN were in writing contemporaneous to the occurrence of these alleged sexual harassment.

    B.    All the written statements on the sexual harassment charges    by

MCWILLIAMS, SMILEY and JORDEN occurred in March 2009 subsequent to the sexual harassment charge by SMILEY in March 2009. They were requested and coordinated by the Investigative Team led by PATTERSON and came well after the fact.

C.     None of the sexual harassment charges were recorded in the personnel files of either  PATTERSON, MCWILLIAMS, SMILEY and JORDEN prior to SMILEY's alleged complaint of sexual harassment of March 2009.

D.     None of the sexual harassment charges were ever recorded in the Plaintiff's personnel file prior to SMILEY's alleged complaint of sexual harassment of March 2009.

E.     None of the sexual harassment charges were based on substantive evidence other than hearsay statements of cooperative and coached select employees of PRAIRIE-HILLS who gave phantom corroborating stories after SMILEY lodged her charges in March 2009.

F.     The star witnesses - DAVID WALKER, SYLVIA DAVIS, FRANCESCA GUNTERSPERGEN, YVETTE BLACK, and MALLORY KELLY - have given only phantom and whimsical statements based on hearsay as opposed to direct eye witness accounts.

G.     All these witnesses were a part of the conspiracy who intentionally engineered the charges of sexual harassment in order to have the Plaintiff terminated from his position as the Director of Information Systems at PRAIRIE-HILLS.

H.     MCWILLIAMS with the assistance of MAYBELL purposefully set the Plaintiff up to be charged with sexual harassment in order to have the Plaintiff terminated because MAYBELL wanted MCWILLIAMS to have the Plaintiff's job.  This claim was corroborated by KATHY TAYLORr, another former member of the Board.  It was also corroborated by MRS. GILES.  Other board members equally advised the Plaintiff to watch his back because he would be set up for sexual harassment charges.

I.     None of the employees including PATTERSON who brought sexual harassment charges have filed any complaint with the EEOC or the Illinois Department of Human Rights against the Plaintiff or PRAIRIE-HILLS for their alleged sexual harassment or inappropriate sexual comments that they leveled against the Plaintiff.

J.     PATTERSON, a leading member of the Investigative Team and one of the complainants against the Plaintiff, had a motive to have the Plaintiff terminated because she was interested in the Plaintiff's position.

K.     PATTERSON who complained that Plaintiff sexually harassed her was appointed to the Investigative Team to investigate the allegations of sexual harassment against the Plaintiff including her own charges against the Plaintiff, thus creating a heightened severe conflict of interest in this outcome determinative investigation of baseless sexual harassment charges.

L.     No sooner was the Plaintiff terminated that PATTERSON was appointed and stepped in to fill the Plaintiff's position as the Director of Information Systems

-37-

at PRAIRIE-HILLS with an added pay in addition to her job of Assistant Superintendent of Curriculum.

M.  It is ironic and highly suspicious that DR. TODD COVAULT [hereinafter, "COVAULT"], the Director of Business Affairs and Human Resources, was not appointed to be a member of or lead the Investigative Team. DR. PATRICIA MOORE, the Supervisor of Human Resources and Transportation and COVAULT's Assistant, who is the Supervisor of Human Resources was not also appointed to be a member of the Investigative Team.

N.  MCWILLIAMS was very confrontational and angry in her relationship with the Plaintiff on the job and was written up several times for her insubordination and tardiness. Her trumped-up sexual harassment charge was in retaliation for being written up by the Plaintiff.

O.  SMILEY was inefficient and feared that the Plaintiff would be replacing her because she did not have a college degree. Her charge of sexual harassment was a retaliation against the Plaintiff because she was always afraid of being fired since she did not have a degree and because the Plaintiff refused to promote her to a PC technician.

P.  In 2005/2006 school year when Richard Williams left, the Plaintiff refused to hire DION WILEY [hereinafter, "WILEY"] to his position of Software Specialist. SMILEY and MCWILLIAMS had lobbied the Plaintiff to hire WILEY [SMILEY's boyfriend] which the Plaintiff declined to do.

Q.  Throughout 2004 through 2005 school year, the Plaintiff did not meet with

MR. LAPORTE to discuss any sexual harassment case against the Plaintiff nor was the Plaintiff aware of any charges that were filed against the Plaintiff. In 2005/2006 school year, FOSTER said to the Plaintiff that he had some sexual complaints about the Plaintiff. Plaintiff asked him as to the identity of the person(s) who made the complaints, he said it was not necessary to tell the Plaintiff since it was unfounded after he had already looked into it. FOSTER advised the Plaintiff to be careful.

R.   The decision of the Investigative Team was outcome determinative for the following reasons:

   i.   in the manner in which the Investigative Team conducted its interviews with select witnesses whose opinions were favorable vis-a-vis other witnesses with apposite and contradictory statements;

   ii.   In that PATTERSON who had an interest in the Plaintiff's position as the Director of Information Systems for the District had made a bogus complaint of sexual harassment against the Plaintiff in order to have the Plaintiff terminated; and

   iii.   In that PATTERSON was appointed and served as a leading member of the Investigative Team that investigated her own claims of sexual harassment and the claims of other complainants against the Plaintiff.

S.   Plaintiff's performance as the Director of Information Systems at PRAIRIE-HILLS had been stellar and full of unsurpassed accomplishments as follows:

   i.   Within the first year, the Plaintiff laid the foundation for a new and

better technology and technology department that was both staff, student and professional development focused. The Board rewarded the Plaintiff by redefining his position as the Director of Information Systems.

ii.    Plaintiff redesigned the network and laid the foundation for a modern technology infrastructure. In 2008, the Plaintiff was able to implement an infrastructure that was super highway.

iii.   Plaintiff replaced all the equipment with modern and efficient ones by reallocating the resources PRAIRIE-HILLS had through the Consortium and District fund while laying the foundation for e-rate grant.

iv.    Plaintiff replaced the analog ancient telephone system with voice over internet protocol system (modern, digital, efficient, scalable, inexpensive). Every employee now has a physical phone and an extension.

v.     Plaintiff replaced the email system with a modern efficient, inexpensive, scalable system by replacing the old Novell system. Every employee now has a working email address.

vi.    Plaintiff consolidated the phone bills to a half of what PRAIRIE-HILLS used to pay with a modern tweak.

vii.   Since the Plaintiff's arrival, PRAIRIE-HILLS has benefitted in over $4m e-rate money. The current year 2008/2009 was $3.5 million.

Plaintiff had already laid the foundation to get over $2 million for the next school year, 2009/2010.

viii. Plaintiff designed and implemented a wireless local area network (LAN) infrastructure for the whole district. Plaintiff also designed and implemented a wireless wide area network (WWAN or MAN - Metropolitan Area Network) to cover all towns (Markham, Hazel Crest, Oak Forest and Country Club Hills) where our schools are located.

ix. In the overall, Plaintiff installed a technology infrastructure in the District that was far superior to any other similar academic elementary institution in the area.

122. Defendant's conduct in not reemploying the Plaintiff based on the unfounded and allegations of sexual harassment including these allegations of sexual harassment have defamed Plaintiff's name and character.

WHEREFORE, for the foregoing reasons, the Plaintiff, WALE ADE-OSHIFOGUN, respectfully requests that this court provide the following equitable and monetary relief:

a. Advance this case on the docket, order a speedy hearing at the earliest practical book date and cause this case to be expedited in every possible way;

b. Order a permanent injunction prohibiting the Defendant, PRAIRIE-HILLS ELEMENTARY SCHOOL DISTRICT #144, from further acts of discrimination and harassment;

c. Order that the Defendant, PRAIRIE-HILLS ELEMENTARY SCHOOL DISTRICT #144, reinstate Plaintiff to his position as the Director of Information Systems;

d.     Award back pay, future earnings and reimbursement for income and fringe

benefits to the present with applicable statutory interest;

e.     Award the costs of litigation including reasonable attorneys' fees and expert

witness fees and expenses;

f.     Award judgment for compensatory damages;

g.     Award punitive damages;

h.     Enter an order requiring the Defendants to implement effective steps to

eliminate and remediate race discrimination from the Defendant's organization;

i.     Grant such other relief as the Court deems equitable and just.

## COUNT V
## INVASION OF PRIVACY ("FALSE LIGHT")

123.   The Plaintiff adopts and incorporates by reference the allegations contained in

paragraphs 14-42, 43-64, 65-84, 85-104 and 105-122 of the Complaint.

124.   In March of 2009, a certain employee of the District allegedly accused Plaintiff of

sexual harassment.

A.     On March 17, 2009, Carolyn Smiley, the secretary of the technology

department complained to Dr. Kimako Patterson, Assistant Superintendent

for Curriculum that she was sexually harassed by the Plaintiff.  She also

alleged that she made similar complaints against the Plaintiff in 2004 and

2008.

B.     On April 29, 2009, Plaintiff was placed on a paid administrative as a result

of SMILEY's complaint of sexual harassment.

125. Certain employees of PRAIRIE-HILLS joined the bandwagon and made similar complaints against Plaintiff subsequent to Ms. Smiley's complaint. The core of their complaints was similar - that Plaintiff made comments of sexual nature to them.

    A.    MCWILLIAMS alleged that from 2004 to sometime in 2007, Plaintiff made offensive sexual remarks to her.

    B.    JORDEN alleged that Plaintiff made offensive comments of  sexual nature to her in February and March of 2009 while she was pregnant.

    C.    PATTERSON also alleged that Plaintiff stated to her sometime in 2008 that she was cute, intelligent, and had a big butt.

126. On March 25, 2009, an Investigative Team was instituted and convened to investigate these allegations.

127. The members of the investigative team were Dr. Patterson and the District attorneys, ROBERT E. RILEY and CAMILLE CRIBARO-MELLE [hereinafter, "CARIBARO-MELLE"].

128. The Investigative Team interviewed select witnesses and concluded surreptitiously that I committed the sexual harassment conduct as alleged by the complainants.

129. Plaintiff unequivocally and categorically denied all these allegations.

130. On April 23, 2009 and in a letter addressed to the Plaintiff, FOSTER advised the Plaintiff that he recommended to the Board not to renew Plaintiff's employment contract based on the allegations of sexual harassment against me. See a copy of Dr. Foster's letter marked Exhibit "C" hereto.

131. On April 29, 2009, in a letter addressed to the Plaintiff through his attorney, the

Board of Education through its attorney, CRIBARO-MELLE, advised the Plaintiff that it would not renew the Plaintiff's employment contract.

132. Specifically, the BOARD OF EDUCATION stated that it has determined not to reemploy the Plaintiff after the employment contract ended on June 30, 2009.

133. On June 20, 2008, FOSTER carried out a comprehensive evaluation of the Plaintiff's performance in Plaintiff's job as the Director of Information Systems at the District and the overall performance rating given by him to the Plaintiff was outstanding.

134. Plaintiff's job performance with PRAIRIE-HILLS from the summer of 2004 to April 29, 2009 have been satisfactory.

135. PRAIRIE-HILLS' determination not to reemploy the Plaintiff after the employment contract ended on June 30, 2009 was inconsistent with the Plaintiff's job performance which was rated as outstanding by FOSTER.

136. PRAIRIE-HILLS' decision not to reemploy the Plaintiff after the employment contract ended on June 30, 2009 was inconsistent and a violation of the State of Illinois School Code which requires that senior school personnel on a twelve (12) months' contract must be informed if their contract was not being renewed for another year by the month of February of each year or within 45 days before the end of the employment contract.

137. PRAIRIE-HILLS failed to adopt FOSTER's recommendation and did not terminate Plaintiff's employment for cause because there was no evidence in the alleged sexual harassment charges to sustain or justify a cause-based termination.

-44-

138.   The *raison d'etre* for FOSTER's recommendation for the termination of Plaintiff's employment - the sexual harassment charges - was inapposite to the BOARD OF EDUCATION 's discreet determination not to reemploy or renew the Plaintiff's contract after it had lapsed on June 30, 2009.

139.   The BOARD OF EDUCATION's decision not to reemploy the Plaintiff after the employment contract ended on June 30, 2009 was pretextual in that it was not based on the Plaintiff's job performance but on some phantom and trumped-up sexual harassment charges for the following reasons:

   A.   None of the allegations of sexual harassment by PATTERSON, MCWILLIAMS, SMILEY and JORDEN were in writing contemporaneous to the occurrence of these alleged sexual harassment.

   B.   All the written statements on the sexual harassment charges  by MCWILLIAMS, SMILEY and JORDEN occurred in March 2009 subsequent to the sexual harassment charge by SMILEY in March 2009.  They were requested and coordinated by the Investigative Team led by PATTERSON and came well after the fact.

   C.   None of the sexual harassment charges were recorded in the personnel files of either  PATTERSON, MCWILLIAMS, SMILEY and JORDEN prior to SMILEY's alleged complaint of sexual harassment of March 2009.

   D.   None of the sexual harassment charges were ever recorded in the Plaintiff's personnel file prior to SMILEY's alleged complaint of sexual harassment of March 2009.

E.      None of the sexual harassment charges were based on substantive evidence other than hearsay statements of cooperative and coached select employees of PRAIRIE-HILLS who gave phantom corroborating stories after SMILEY lodged her charges in March 2009.

F.      The star witnesses - DAVID WALKER, SYLVIA DAVIS, FRANCESCA GUNTERSPERGEN, YVETTE BLACK, and MALLORY KELLY - have given only phantom and whimsical statements based on hearsay as opposed to direct eye witness accounts.

G.      All these  witnesses were a part of the conspiracy who intentionally engineered the charges of sexual harassment in order to have the Plaintiff terminated from his position as the Director of Information Systems at PRAIRIE-HILLS.

H.      MCWILLIAMS with the assistance of MAYBELL purposefully set the Plaintiff up to be charged with sexual harassment in order to have the Plaintiff terminated because MAYBELL wanted MCWILLIAMS to have the Plaintiff's job.  This claim was corroborated by KATHY TAYLORr, another former member of the Board.  It was also corroborated by MRS. GILES.  Other board members equally advised the Plaintiff to watch his back because he would be set up for sexual harassment charges.

I.      None of the employees including PATTERSON who brought sexual harassment charges have filed any complaint with the EEOC or the Illinois Department of Human Rights against the Plaintiff or PRAIRIE-HILLS for their

alleged sexual harassment or inappropriate sexual comments that they leveled against the Plaintiff.

J.     PATTERSON, a leading member of the Investigative Team and one of the complainants against the Plaintiff, had a motive to have the Plaintiff terminated because she was interested in the Plaintiff's position.

K.     PATTERSON who complained that Plaintiff sexually harassed her was appointed to the Investigative Team to investigate the allegations of sexual harassment against the Plaintiff including her own charges against the Plaintiff, thus creating a heightened severe conflict of interest in this outcome determinative investigation of baseless sexual harassment charges.

L.     No sooner was the Plaintiff terminated that PATTERSON was appointed and stepped in to fill the Plaintiff's position as the Director of Information Systems at PRAIRIE-HILLS with an added pay in addition to her job of Assistant Superintendent of Curriculum.

M.     It is ironic and highly suspicious that DR. TODD COVAULT [hereinafter, "COVAULT"], the Director of Business Affairs and Human Resources, was not appointed to be a member of or lead the Investigative Team.  DR. PATRICIA MOORE, the Supervisor of Human Resources and Transportation and COVAULT's Assistant, who is the Supervisor of Human Resources was not also appointed to be a member of the Investigative Team.

N.     MCWILLIAMS was very confrontational and angry in her relationship with the Plaintiff on the job and was written up several times for her insubordination

and tardiness. Her trumped-up  sexual harassment charge was in retaliation for being written up by the Plaintiff.

O.    SMILEY was inefficient and feared that the Plaintiff would be replacing her because she did not have a college degree.  Her charge of sexual harassment was a retaliation against the Plaintiff because she was always afraid of being fired since she did not have a degree and because the Plaintiff refused to promote her to a PC technician.

P.    In 2005/2006 school year when Richard Williams left, the Plaintiff refused to hire DION WILEY [hereinafter, "WILEY"] to his position of Software Specialist.  SMILEY and MCWILLIAMS had lobbied the Plaintiff to hire WILEY [SMILEY's boyfriend] which the Plaintiff declined to do.

Q.    Throughout 2004 through 2005 school year, the Plaintiff did not meet with MR. LAPORTE to discuss any sexual harassment case against the Plaintiff nor was the Plaintiff aware of any charges that were filed against the Plaintiff. In 2005/2006 school year, FOSTER said to the Plaintiff that he had some sexual complaints about the Plaintiff.  Plaintiff asked him as to the identity of the person(s) who made the complaints, he said it was not necessary to tell the Plaintiff since it was unfounded after he had already looked into it. FOSTER advised the Plaintiff to be careful.

R.    The decision of the Investigative Team was outcome determinative for the following reasons:

i.    in the manner in which the Investigative Team conducted its

interviews with select witnesses whose opinions were favorable vis-a-vis other witnesses with apposite and contradictory statements;

ii.      In that PATTERSON who had an interest in the Plaintiff's position as the Director of Information Systems for the District had made a bogus complaint of sexual harassment against the Plaintiff in order to have the Plaintiff terminated; and

iii.     In that PATTERSON was appointed and served as a leading member of the Investigative Team that investigated her own claims of sexual harassment and the claims of other complainants against the Plaintiff.

S.      Plaintiff's performance as the Director of Information Systems at PRAIRIE-HILLS had been stellar and full of unsurpassed accomplishments as follows:

i.       Within the first year, the Plaintiff laid the foundation for a new and better technology and technology department that was both staff, student and professional development focused. The Board rewarded the Plaintiff by redefining his position as the Director of Information Systems.

ii.      Plaintiff redesigned the network and laid the foundation for a modern technology infrastructure. In 2008, the Plaintiff was able to implement an infrastructure that was super highway.

iii.     Plaintiff replaced all the equipment with modern and efficient ones by reallocating the resources PRAIRIE-HILLS had through the Consortium and District fund while laying the foundation for e-rate

grant.

iv.   Plaintiff replaced the analog ancient telephone system with voice over internet protocol system (modern, digital, efficient, scalable, inexpensive). Every employee now has a physical phone and an extension.

v.    Plaintiff replaced the email system with a modern efficient, inexpensive, scalable system by replacing the old Novell system. Every employee now has a working email address.

vi.   Plaintiff consolidated the phone bills to a half of what PRAIRIE-HILLS used to pay with a modern tweak.

vii.  Since the Plaintiff's arrival, PRAIRIE-HILLS has benefitted in over $4m e-rate money. The current year 2008/2009 was $3.5 million. Plaintiff had already laid the foundation to get over $2 million for the next school year, 2009/2010.

viii. Plaintiff designed and implemented a wireless local area network (LAN) infrastructure for the whole district. Plaintiff also designed and implemented a wireless wide area network (WWAN or MAN - Metropolitan Area Network) to cover all towns (Markham, Hazel Crest, Oak Forest and Country Club Hills) where our schools are located.

ix.   In the overall, Plaintiff installed a technology infrastructure in the District that was far superior to any other similar academic elementary institution in the area.

140.     Defendant's conduct in not reemploying the Plaintiff based on the unfounded and

allegations of sexual harassment including these allegations of sexual harassment

without justification constituted false light invasion of his privacy.

WHEREFORE, for the foregoing reasons, the Plaintiff, WALE ADE-OSHIFOGUN,

respectfully requests that this court provide the following equitable and monetary relief:

a.     Advance this case on the docket, order a speedy hearing at the earliest

practical book date and cause this case to be expedited in every possible way;

b.     Order a permanent injunction prohibiting the Defendant, PRAIRIE-HILLS

ELEMENTARY SCHOOL DISTRICT #144, from further acts of discrimination and

harassment;

c.     Order that the Defendant, PRAIRIE-HILLS ELEMENTARY SCHOOL

DISTRICT #144, reinstate Plaintiff to his position as the Director of Information Systems;

d.     Award back pay, future earnings and reimbursement for income and fringe

benefits to the present with applicable statutory interest;

e.     Award the costs of litigation including reasonable attorneys' fees and expert

witness fees and expenses;

f.     Award judgment for compensatory damages;

g.     Award punitive damages;

h.     Enter an order requiring the Defendants to implement effective steps to

eliminate and remediate race discrimination from the Defendant's organization;

i.     Grant such other relief as the Court deems equitable and just.

**COUNT VI**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

141.    The Plaintiff adopts and incorporates by reference the allegations contained in

paragraphs 14-42, 43-64, 65-84, 85-104, 105-122 and 123-140 of the Complaint.

142.    The Defendant's conduct and the conduct of its manager and supervisor as outlined

in the foregoing paragraphs were extreme, outrageous and beyond the bounds of

moral decency and intended to cause extreme distress which Plaintiff, WALE ADE-

OSHIFOGUN, suffered and continues to suffer since the incidents alleged herein,

a psychological condition for which he is receiving medical treatment.

143.    The Defendant's conduct and the conduct of its manager and supervisor were so

extreme and outrageous, subjected Plaintiff to severe mental distress and suffering

and no reasonable person could be expected to endure it.

144.    By reason thereof, Plaintiff was injured by the acts of Defendant and the conduct

of its administrators, including, but not limited to emotional injuries, great distress

of body and mind, pain and suffering, post-traumatic stress syndrome, costs of

treating such injuries, and other consequential damages.

WHEREFORE, for the foregoing reasons, the Plaintiff, WALE ADE-OSHIFOGUN,

respectfully requests that this court provide the following equitable and monetary relief:

a.    Advance this case on the docket, order a speedy hearing at the earliest

practical book date and cause this case to be expedited in every possible way;

b.    Order a permanent injunction prohibiting the Defendant, PRAIRIE-HILLS

ELEMENTARY SCHOOL DISTRICT #144, from further acts of discrimination and

harassment;

c.    Order that the Defendant, PRAIRIE-HILLS ELEMENTARY SCHOOL DISTRICT #144, reinstate Plaintiff to his position as the Director of Information Systems;

d.    Award back pay, future earnings and reimbursement for income and fringe benefits to the present with applicable statutory interest;

e.    Award the costs of litigation including reasonable attorneys' fees and expert witness fees and expenses;

f.    Award judgment for compensatory damages;

g.    Award punitive damages;

h.    Enter an order requiring the Defendants to implement effective steps to eliminate and remediate race discrimination from the Defendant's organization;

i.    Grant such other relief as the Court deems equitable and just.

## DEMAND FOR A TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action.

Respectfully submitted,

**WALE ADE-OSHIFOGUN**

By:_____/s/  Paul O. Otubusin_____
One of His Attorneys

-53-

Paul O. Otubusin
ARDC No: 6205261
**OTUBUSIN & ASSOCIATES, P.C.**
77 West Washington Street
Suite 1204
Chicago, Illinois  60602
E-mail: otubusinlaw@aol.com
(312) 251-1480
(312) 251-1481 (Fax)