## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| WALE ADE-OSHIFOGUN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09 cv 6327 |
| | ) | |
| PRAIRIE-HILLS ELEMENTARY SCHOOL | ) | Judge Rebecca R. Pallmeyer |
| DISTRICT #144, CAROLYN SMILEY, | ) | |
| JUANITA MCWILLIAMS, PRINCESS | ) | |
| JORDEN and DR. KIMAKO PATTERSON, | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF'S MOTION TO EXCEED PAGE LIMITATION

NOW COMES the Plaintiff, WALE ADE-OSHIFOGUN, by and through his attorneys,

OTUBUSIN & ASSOCIATES, P.C. and moves this Honorable Court for leave to exceed

the page limitation set by local Rule. As grounds for this motion, the Plaintiff states as

follows:

1. Pursuant to local Rule, Plaintiff has exceeded the page limitation in his Reply Brief

   in Support of His Motion to Vacate. A copy of the 20 page Reply Brief is attached

   as Exhibit "A" hereto.

2. The facts and issues in Plaintiff's Reply Brief are complex due to many issues that

   have been raised by the Defendants.

3. Plaintiff will not adequately be able to brief the issues if held to the page limitation

   which is presently set by local Rule.

WHEREFORE, the Plaintiff, WALE ADE-OSHIFOGUN, respectfully requests this

Court to grant Plaintiff leave of court to exceed the page limitation and to file his 20 page

Reply Brief in Support of His Motion to Vacate *instanter.*

Respectfully submitted,

**WALE ADE-OSHIFOGUN**


By:_____/s/ Paul O. Otubusin_____
One of His Attorneys


Date: October 11, 2011

Paul O. Otubusin, Esq.
**OTUBUSIN & ASSOCIATES, P.C.**
77 West Washington Street
Suite 1204
Chicago, Illinois  60602
Firm No: 28406
E-mail: otubusinlaw@aol.com
(312) 251-1480
(312) 251-1481 (Fax)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| WALE ADE-OSHIFOGUN,      ) | |
| ) | |
| Plaintiff,      ) | |
| ) | |
| v.      ) | No. 09 cv 6327 |
| ) | |
| PRAIRIE-HILLS ELEMENTARY SCHOOL      ) | Judge Rebecca R. Pallmeyer |
| DISTRICT #144, CAROLYN SMILEY,      ) | |
| JUANITA MCWILLIAMS, PRINCESS      ) | |
| JORDEN and DR. KIMAKO PATTERSON,      ) | |
| ) | |
| Defendants.      ) | |

### PLAINTIFF'S REPLY BRIEF
### IN SUPPORT OF HIS MOTION TO VACATE

NOW COMES the Plaintiff, Wale Ade-Oshifogun, by and through his attorneys, OTUBUSIN & ASSOCIATES, P.C., and, in reply to Defendants' Response to Plaintiff's Motion to Vacate Order of January 6, 2011 dismissing this case with prejudice and reinstate case, states as follows:

### DEFENDANT'S ARGUMENT

Defendants argue repeatedly that Plaintiff has brought this motion due to his regret for having dismissed his case with prejudice; that Plaintiff rehashes the same arguments he has made repeatedly and that the Motion contains no new evidence or facts to warrant the vacature of the dismissal. Defendants' entire brief is an *argumentum non sequitur* because the defendants' arguments have incorrectly drawn conclusions from premises which aren't logically connected with them. Their arguments are equally a *red herring* because they are constantly introducing irrelevant issues without addressing the core issues of fraud, misrepresentation, and misconduct upon which plaintiff's motion to vacate is centered upon.

# EXHIBIT "1"

Defendants' argument is misplaced and does not answer the core of Plaintiff's allegations of fraud, misrepresentation, and misconduct leveled against both the Defendants and their attorneys. These charges have not been answered because the Defendants and their attorneys have no excusable reason for their conduct throughout the litigation. If the defendants had known that Plaintiff would revisit the litigation with Federal Rules of Civil Procedures 9(b) and 60(b) motion to vacate the dismissal order, their conduct would have certainly been different.

Further, Judge Pallmeyer did not state nor suggest on July 25, 2011 that Plaintiff's Motion contains neither new evidence or facts demonstrating the existence of fraud. This statement was made by Ms. Rachel E. Lutner, the defense counsel. And plaintiff's counsel responded that plaintiff's motion to vacate has made the case for fraud and misrepresentation. Defendants' argument is an *argumentum ad verecundiam* in falsely using the admiration and authority of the Honorable Rebecca Pallmeyer to win support for their winningless and baseless argument in claiming what the jurist did not state on the record. Contrary to what Ms. Lutner has ascribed to Judge Pallmeyer, this court has stated unequivocally, *inter alia*, in its written order of September 13, 2011 that it has not expressed any opinion on the merits of Plaintiff's motion. A copy of the Order of September 13, 2011 marked Exhibit "A" is attached hereto.

Now to the issues that were and are still outstanding.

## 1. RETALIATORY INTIMIDATION OF WITNESSES

Soon after Mrs. Sarah Hamm and Mr. Anthony Cole gave their voluntary affidavits as to the fraud, misrepresentation and misconduct that the defendants and their attorneys have perpetrated on this court and the Plaintiff, the defendants and their attorneys went to

-2-

work in an aggressive attempt to remove these elected members of the Board. Attached as Exhibit "B" to this reply is a copy of Mrs. Hamm's affidavit with supporting evidence of the letter dated April 14, 2011 drafted by the attorneys and signed by Juanita Jordan and sent to Dr. Vanessa Kinder; the billable hours generated by these attorneys dated for representation arising therefrom in their failed attempt to remove Mrs. Hamm and Mr. Cole from the Board of Education; and the reply from Dr. Vanessa J. Kinder dated May 1, 2011 denying their request. Attached as Exhibit "C" to this reply is a copy of Mr. Anthony A. Cole's affidavit with supporting evidence of the letter dated April 14, 2011 drafted by the attorneys and signed by Juanita Jordan and sent to Dr. Vanessa Kinder; the billable hours generated by these attorneys dated for representation arising therefrom in their failed attempt to remove Mrs. Hamm and Mr. Cole from the Board of Education; and the reply from Dr. Vanessa J. Kinder dated May 1, 2011 denying their request

There was no time that a Board meeting was held in which the majority of the Board members determined that Mrs. Hamm and Mr. Cole have willfully failed to perform their office duties by voluntarily giving their affidavits to plaintiff's counsel and, therefore, must be removed. This was an action spearheaded by the defense attorneys in collusion with Mrs. Jordan. See the affidavits of Mrs. Hamm and Mr. Cole marked Exhibits "B" and "C" *supra.*

Nowhere in their 15 page response brief have the defendants and their attorneys responded to this allegation even though it was conspicuously stated as Issue No. IX in Plaintiff's Motion to Vacate the Order of Dismissal of January 6, 2011. Their failure to respond to this allegation confirms the veracity of this allegation, attests to the bestiality and illegality of their action, and, further confirms that their action was in retaliation against these

-3-

witnesses in coming forward to set the story straight, and advise this court and the Plaintiff of the fraud, misrepresentation and misconduct that the defendants and their attorneys have perpetrated throughout this proceeding.

Again, the Honorable Mrs. Hamm and the Honorable Mr. Cole, elected officials and sitting members of the Board, must be praised for being whistleblowers in this case and alerting the Court as to the misconduct, fraud, and misrepresentations of the defendants and their defense attorneys. A cursory review of the letter written to Dr. Kinder leads to only one conclusion: that this letter could not have been written by a lay person without legal training given its heavily laden legalese, case citations, case summaries of Defendants' baseless legal arguments in the case at bar, etc. Undoubtedly, this letter was drafted by the defense attorneys and presented to Ms. Jordan, the then Board President, to sign.

If the allegations as stated in the affidavits are true, then the defense attorneys have over-reached their legal duties and violated the Canon of Ethics by using any and all means available to them to intimidate and exact penal measures against Mrs. Hamm and Mr. Cole to effectuate their removal from the Board of Education for voluntarily giving their sworn statements in this case on March 6, 2011.

Defendants' conduct after the witnesses had given their affidavits amounts to intimidation of witnesses, is repugnant and highly condemnable. The co-option of Mrs. Jordan to sign off on one of the letters that they drafted for purposes of reporting and removing Mrs Hamm and Mr. Cole, elected officials, from the Board of Education amounts to the tampering of witnesses. The conduct of the School District attorneys after Plaintiff had filed his response opposing Defendants' Rule 11 motion amounted to the employment of extra judicial processes to inflict the maximum damage on these witnesses including their

-4-

removal from the Board of Education. A basic ethical canon of the legal profession is that an attorney should not intimidate a witness involved in an on-going case. These attorneys flagrantly violated this canon of ethics both in drafting the illegal letter of removal to Dr. Kinder and vigorously pursuing the removal of these elected Board members. Dr. Kinder denied their request and responded that these Board members are elected officials and that the South Cook Intermediate Service Center has no jurisdiction over the matter. See Exhibits "B" and "C" supra containing Dr. Kinder's letter. The defense attorneys' conduct brings disrepute to the legal profession and should be condemned. Based on this innocuous conduct alone and pursuant to Rule 60(b)(6), this Court should vacate the Order entered on January 6, 2011 dismissing Plaintiff's Second Amended Complaint with prejudice.

This charge of intimidation of witnesses who voluntarily gave truthful affidavits as to the veracity of plaintiff's position vis-a-vis the tampering of witness and the innocuous conduct of the defense attorneys in this case should be enough sole *raison d'etre* to vacate the Dismissal Order of January 6, 2011.

## 2. DEFENDANT'S ARGUMENT THAT PLAINTIFF'S MOTION CONTAINS NO NEW EVIDENCE OR FACTS IS NEITHER TENABLE NOR SUSTAINABLE GIVEN THE CHRONOLOGICAL AND HISTORICAL EMPIRICAL FACTS OF THIS CASE

Prior to the stay of discovery on November 6, 2010, only two depositions had been taken to date out of plaintiff's ten (10) identified and disclosed deponents or witnesses. First was the deposition of Wale Ade-Oshifogun, the Plaintiff, who gave his own version of events. Second was the deposition of Dr. Kimako Patterson who allegedly gave the authoritative "official" version of events and the authoritative "official" policies of the Board

and the District, all of which turned out to be fabricated and wholly debunked and contradicted by two current board members, Ms. Sarah Hamm [a seasoned board member and a past President of the Board for two terms] and Mr. Anthony Cole [the oldest board member and a past President of the Board].

Prior to November 6, 2011, defendants consistently and repeatedly requested this Court to stay the discovery depositions on the ground that plaintiff was merely harassing the defendants and had no new evidence or facts to substantiate his case.[1] On the other hand, Plaintiff was literally begging this court to allow discovery to continue, that the defendants were in control of the evidence, and that plaintiff would require the discovery process to uncover evidentiary facts that would substantiate his claims. Despite plaintiff's plea, and on the day that plaintiff's counsel was absent in court, and on defense counsel's oral motion, this court stayed the discovery.

Defendants knew or should have known on the several occasions that the defendants requested a stay of discovery that there were witnesses like Ms. Hamm and Mr. Cole, and even Dr. Covault [Director of Human Resources for the School District], who had evidence or testimonies favorable to the Plaintiff that the Defendants did not want Plaintiff to know of or to be brought to the epistemological purview of this Court.

This Court stayed the discovery on November 16, 2010. Plaintiff dismissed his case on January 6, 2011. On March 6, 2011, Mrs. Hamm and Mr. Cole disclosed new evidence and facts in their affidavits which were given unsolicited and voluntarily to plaintiff's

---

[1]Despite notices of deposition that were issued in this case by the Plaintiff to take the depositions of eight (8) other deponents and despite repeated communication back and forth with defense counsel on this matter, defense counsel refused to present any other deponents for their deposition.

counsel.[2] If the defendants believe that the new evidence and facts given by Mrs. Hamm and Mr. Cole were incorrect or false, one would have expected the defendants and their District attorneys to get counteraffidavits from the current President of the Board and other board members to contradict what these affiants have stated. They cannot, could not and would not do so because these affiants have stated succinctly and unequivocally the Board policies and the District's practices in the normal course of business in Prairie-Hills School District No. 144. If **the affiants' affidavits were given on March 6, 2011**, a date subsequent to **the stay of discovery of this case on November 16, 2010** and **the dismissal of this action on January 6, 2011**, it is *sine qua non* that the new evidence and facts that these affiants provided could not have been available prior to either the court-ordered stay of discovery on November 16, 2011 or the dismissal of this case on January 6, 2011.

Defendants' argument that "[p]laintiff has also made these same arguments at virtually every status call and appearance before this Court"[3] is nothing more than an *argumentum ad nauseam.* In stating this same argument repeatedly, Defendants incorrectly believe that the more it is stated, the more likely defendants' argument would be accepted as true. Based on the chronological and historical empirical facts of this case, Defendants' argument is nonsensical and is not just sustainable.

---

[2]Their affidavits contradicted the Defendants' various assertions and outright misrepresentations in this case and upon which their defense was based.

[3]See Defendants' Response to Plaintiff's Motion to Vacate the Dismissal of this Case with Prejudice, p. 13. Defendants commit the fallacy of *sweeping generalization* by assuming that the Plaintiff is making the same arguments as in the litigation itself prior to the dismissal when in fact there are new evidence and facts adduced by the Plaintiff which the Defendants have not addressed at all.

3.  **DEFENDANTS COMMITTED FRAUD BY MAKING MATERIAL MISREPRESENTATION OF MATTERS AND/OR FACTS UNDER THEIR CONTROL WHICH THEY KNEW OR SHOULD HAVE KNOWN TO BE FALSE WHEN THEY ASSERTED THEM DURING THIS PROCEEDING**

Rule 60(b) goes to the issue of fraud, misrepresentation, and misconduct which must

be established by clear and convincing evidence. DiVito v. Fidelity & Deposit Co of Md.,

361 F.2d 936, 938 (7th Cir. 1966); Harrington v. City of Chicago, 433 F.3d 542, 545 (7th Cir.

2006).

A.  **Dr. Patterson lied under oath at her deposition when she stated that she did not accuse Plaintiff of sexual harassment and her false testimony which Plaintiff then believed led Plaintiff to dismiss his allegations against her**

On October 28, 2010, Plaintiff's counsel took the deposition of Dr. Patterson. A copy

of the relevant pages of the transcript of Dr. Patterson's deposition marked Exhibit "D" is

attached hereto. During said deposition, Dr. Patterson stated unequivocally that she did not

accuse Plaintiff of sexual harassment. Dr. Patterson was asked the following question and

she gave the following answer:

Q.  You also had a complaint of sexual harassment against Wale, did you?
A.  No, I did not.

See Exhibit "D", page 73.

On the basis of Dr. Patterson's testimony, Plaintiff voluntarily dismissed Counts VIII

and XIII of his Second Amended Complaint against her. In their March 6, 2011 affidavits,

Mrs. Hamm and Mr. Cole contradicted Dr. Patterson's deposition testimony and stated

succinctly that Dr. Patterson openly accused the Plaintiff of sexual harassment before the

Board of Education. Copies of their prior August 1, 2011 affidavits marked Exhibits "E"

-8-

[Hamm] and "F" [Cole] respectively are attached hereto. See page 2 of Exhibits "E" and "F" respectively. More surprising was that nowhere in the Defendant Patterson's eleven (11) page Motion for Summary Judgment did the defense counsel ever mention that Dr. Patterson openly accused the Plaintiff of sexual harassment before the Board of Education. The facts provided by Mrs. Hamm and Mr. Cole on March 6, 2011 which contradicted Dr. Patterson's testimony was new information and evidence which were not available to the Plaintiff prior to either dismissing his allegations against Dr. Patterson on November 6, 2011 or dismissing his action in this case on January 6, 2011.

By stating that she did not accuse Wale of sexual harassment, Dr. Patterson made a false statement of material fact under oath. Defense counsel, who were present at all Board meetings as the District's attorneys, knew of Dr. Patterson's misrepresentation but failed to either correct it on the record or during the pendency of this case. The omission of material fact will support a fraud charge if the party failing to disclose the fact had a duty to disclose it. See AMPAT/Midwest, Inc. v. Illinois Tool Works, Inc., 896 F.2d at 1040. Had Plaintiff been privy to this uncontroverted and affirmative information provided by Ms. Hamm and Mr. Cole, had Plaintiff known definitively that Dr. Patterson made a false material statement at her deposition, and had Plaintiff known that her defense attorneys intentionally failed to disclose it when they had a duty to do so, Plaintiff would not have voluntarily dismissed Counts VIII and XIII of his Second Amended Complaint against Dr. Patterson.

**B. Dr. Patterson lied under oath at her deposition when she stated that Attorney Robert Riley was not a member of the Investigation Team which investigated the allegations of sexual harassment against the Plaintiff**

Defendants argue that plaintiff's counsel did not conduct an effective deposition and

-9-

that was why Dr. Patterson did not answer correctly that Mr. Robert Riley was a member of the Investigation Team. This argument lacks any merit; it is not supported by the facts in this case and should never have been made in the face of uncontroverted clear and convincing evidence. This argument is an affront not only to the Plaintiff and the Plaintiff's counsel but to this court that has to decipher this nonsensical argument. The argument is an insult to this Court and the Plaintiff because it is not based on facts.

The following was the discourse between Plaintiff's counsel and Dr. Patterson. Dr. Patterson was asked the following questions and she gave the following answers:

Q.    With whom else did you investigate this allegation?
A.    With Camille Cribaro-Mello.
Q.    That's all?
A.    That would be correct.
Q.    The two of you?
A.    That's correct.

See Dr. Patterson's deposition marked Exhibit "D" hereto, page 70.

In their affidavits of March 6, 2011, Ms. Hamm and Mr. Cole contradicted Dr. Patterson's misrepresentation at her deposition. They stated without equivocation that the Investigative Team was composed of Dr. Patterson, and the School District attorneys Robert Riley and Camille Cribaro-Melle; that Dr. Patterson misrepresented in this litigation that the Investigation Team was composed of only School District attorney Cribaro-Melle and herself, and that the transcript of the Executive Session of the Board of Education meeting confirms that Dr. Patterson, School District attorneys Riley and Cribaro-Melle were the members of the Investigation Team. See Exhibits "E" and "F" respectively, page 2.

Dr. Patterson made a false statement of material fact which she knew or believed to be false when she made it. She was supposedly the Chair of the Investigation Team,

-10-

and knew or should have known that Robert Riley was a member of her Investigation Team. She knew at the time she made the false material statement that the Team was composed of **three members,** that is, the School District attorneys **Mr. Riley** and **Camille Cribaro-Mello** and **herself**.

Mr. Riley and Ms. Lutner, sitting by the right and left sides of Dr. Patterson at her deposition, had a duty to correct the record and disclose the fact that Mr. Riley was a member of the Investigation Team but failed to disclose it. The omission of material fact will support a fraud charge if the party failing to disclose the fact had a duty to disclose it. See AMPAT/Midwest, Inc. v. Illinois Tool Works, Inc., 896 F.2d 1035 , 1040 (7th Cir. 1990). Duhl v. Nash Realty Co., 429 N.E.2d at 1273. Mr. Riley and Ms. Lutner had a duty to disclose that Mr. Riley was in fact a member of the Investigation Team but failed to do so, and allowed the omission of material fact or misrepresentation to stand in the hope that Plaintiff and Plaintiff's counsel would never find out. AMPAT/Midwest, Inc., 896 F.2d at 1040.

Defendants argued furtively that the fact that Mr. Riley interviewed the Plaintiff about the sexual harassment allegations implied that he, Mr. Riley, was a member of the Investigation Team. By making this surreptitious argument, Defendants are asking the Plaintiff to make a metaphysical inference or "a leap of faith" here that just because Mr. Riley interviewed the Plaintiff about sexual harassment allegations, Plaintiff should assume and/or infer that Mr. Riley was a member of the Investigation Team. This argument is a fallacy in logic. While Mr. Riley might have interviewed the Plaintiff about sexual harassment allegations, it did not necessarily follow that he was therefore a member of the Investigation Team. Let's look at the following example:

-11-

**Premise I:** Having just arrived in Ohio, I saw a white squirrel.
**Conclusion:** Therefore, all Ohio squirrels are white.

While there are many many squirrels in Ohio, the white ones are very rare. This

fallacy in logic is not different from the defendants' illogical and fallacious argument:

**Premise I:** Mr. Riley interviewed the Plaintiff about sexual harassment allegations.
**Conclusion:** Therefore, Mr. Riley is a member of the Investigation Team.

Defendant's argument is more an inductive fallacy because the premise does not

provide enough support for the conclusion, and even if the premise is true, the conclusion

would not be more likely to be true. Defendant's argument is an error in reasoning in which

the premise given for the conclusion does not provide the needed degree of support. As

a fallacy, this mistake in reasoning is intended to be potentially deceptive, that is, to fool at

least some people some of the time. And that is precisely what the defendants have

attempted to do here but have failed to accomplish.

The information provided by Mrs. Hamm and Mr. Cole on March 6, 2011 was new

information and evidence that Plaintiff and Plaintiff's counsel came to know definitively after

the dismissal of Plaintiff's action on January 6, 2011. Had Plaintiff known at the time that

Dr. Patterson made this representation that it was not true, and had Plaintiff known that her

defense attorneys intentionally failed to disclose it when they had a duty to do so, Plaintiff

would not have voluntarily dismissed his Second Amended Complaint.

## C. Dr. Patterson lied under oath at her deposition when she stated that the Plaintiff was not an Administrator

During her October 28, 2010, Dr. Patterson was asked the following question and

she gave the following answer:

Q. Did you supervise Wale?

-12-

A.    Wale was not an administrator.

See Dr. Patterson's deposition marked Exhibit "D" supra, page 10.

Defendants' argument that the Plaintiff was a supervisor and a manager and not an administrator is not only ridiculous, it is not supported by the facts of this case and the affiants' affidavits. Contrary to the Defendants' argument that nowhere did they argue in their brief that Plaintiff was not an administrator, the Defendants did assert that Plaintiff was a supervisor and a manager, and not an administrator as defined by ISBE. See Defendants' Responses to Plaintiff's First Set of Interrogatories marked as Exhibit "G" hereto, pages 3, 8, 9, and 10.

It is elementary corporate law that in all by-laws of any corporate body that the Board of Directors sets the policies of the organization or corporation, and, that the officers who execute the policies are subject to and answerable to the Board of Directors. Corporate attorneys merely serve in the role of counselors and/or legal advisers and do not set nor execute the Board's policies.[4] The officers of the School District are subject to the Board of Directors and the Board of Directors employ and/or appoint the officers of the District who are answerable to said Board of Directors.

Contrary to the Defendants' assertion, Mrs. Hamm and Mr. Cole have stated succinctly that Dr. I.V. Foster, Jr., the School Superintendent at the time, had in the past asked the Plaintiff to serve as an administrator of the School District while Dr. Foster was away from the School District; that the Plaintiff attended all cabinet meetings as an

---

[4]It is purely nonsensical and contrary to considered rational judgment that these hired defense attorneys can claim to know the Board of Directors' policies and the District's customs and practices more than the Board of Directors themselves who set these policies and oversee the District's customs and practices which are executed by the officers who are subject to and answerable to the Board of Directors.

administrator and was present for all Board meetings; that the Plaintiff was an administrator and a member of the cabinet just like Dr. Todd Covault, Dr. Kimako Patterson, and Dr. Denise Julius; and that the Defendants made a false representation in denying that Wale was not an administrator in the School District. See Mrs. Hamm's affidavit marked Exhibit "E" hereto, pages 3 and 4; See Mr. Cole's affidavit marked Exhibit "F" supra, page 3.

Defendants argued that Dr. Patterson's misrepresentation that Plaintiff was not an administrator was irrelevant to the Plaintiff's breach of contract claim. Defendants' argument missed the central issue of this case. Defendants' attempt to reclassify Plaintiff's status as a non-administrator when in fact he was an administrator was a central core in his breach of contract claim and in his allegation of the Defendants' failure to notify the Plaintiff of the non-renewal of his contract by February 1st as was the District's custom and practice.

Dr. Patterson made a false statement of material fact of Plaintiff's status as an administrator which she knew or believed to be false when she made it. As an Assistant Superintendent, she knew or should have known that the Plaintiff acted in place of Dr. Foster as an administrator when Dr. Foster was away from the School District. She knew or should have known that the Plaintiff attended all cabinet meetings as an administrator and was a member of the cabinet same as Dr. Foster, Dr. Todd Covault, Dr. Denise Julius and herself.[5] Dr. Patterson made the false statement of material fact as a misguided authoritative "official" position of the District to induce the Plaintiff to act on it.

The definitive statement provided by Ms. Hamm and Mr. Cole in their affidavits on

---

[5] The cabinet members of the District at the relevant time of the Defendants' alleged misconduct giving rise to Plaintiff's cause of action were Dr. Foster, Dr. Patterson, Dr. Covault, Dr. Julius and the Plaintiff. See Plaintiff's Second Amended Complaint attached hereto as Exhibit "H", page 8, paragraph 42.

-14-

March 6, 2011 was new information and evidence which contradicted the misguided official stance enunciated by Dr. Patterson at her deposition. Plaintiff relied on Dr. Patterson's misrepresentation [the misguided official version] since she gave this statement under oath at her deposition, and, thereafter, voluntarily dismissed all other counts of the Second Amended Complaint. See Astor Chartered Limousine Co. v. Runnfeldt Inv. Corp., 910 F.2d at 1540; Duhl v. Nash Realty Co., 429 N.E.2d at 1273. Had Plaintiff known at the time that Dr. Patterson made this representation that it was not true, Plaintiff would not have voluntarily dismissed his Second Amended Complaint.

**D.    Defendants made a Material Misrepresentation when they denied that Plaintiff's contract was breached when the District failed to renew his Contract by February 1, 2009**

Defendants have asserted that the District has no policy that would require it to give a notice of non-renewal of his contract to him by February 1st. Defendants asserted that Plaintiff was not entitled to be notified by February 1st if his contract would not be renewed. Defendants further stated that Dr. Covault, Dr. Julius and Dr. Patterson do not have to be informed by February 1st if their contracts would not be renewed.

Contrary to defendant's stance, the affiants stated unequivocally that the Defendants made a material misrepresentation to have denied that the Board did not breach its employment contract with Wale when it failed to inform him of the non-renewal of his contract by February 1st of 2009. Further, they stated that the Defendants are fully aware that the Board has a policy of always informing senior officials and administrators of the non-renewal of their employment contract by February 1st of prior year that their contract would not be renewed or extended upon the recommendation of the Superintendent to the

-15-

Board. See Affiants' affidavits, Exhibits "E" and "F", page 3 respectively.

Defendants made the material misrepresentation intentionally for the purpose of inducing Plaintiff to act on it. Plaintiff relied on Defendants' false statement without knowing at the time when it was made by them that it was false and, consequently, voluntarily dismissed all other counts of the Second Amended Complaint. Had Plaintiff known at the time that Defendants made this representation that it was not true, Plaintiff would not have voluntarily dismissed his Second Amended Complaint.

### E. Affiants' Assertion of the District's Open Advancement Policy is New Information Not Available to the Plaintiff prior to the Dismissal of his Case on January 6, 2011

Defendants were very well aware of the District's Open Advancement Policy because several employees including Dr. Patterson had taken advantage of this Policy and have been beneficiaries of this Policy.[6] In fact, the affiants went at length to give several examples of employees including Dr. Patterson who have benefitted from this Policy. See Exhibits "E" and "F", pages 2-5 respectively.

The attempt by the Defendants to minimize the central role that this Policy played in the advancement of employees within the District including Dr. Patterson herself vis-a-vis the Plaintiff who was not afforded the same advantage under this Policy creates a disparate treatment of the Plaintiff resulting in a discriminatory animus against the Plaintiff. If under the Open Advancement Policy, Dr. Patterson was first hired as a Principal, then promoted to a Supervisor of Curriculum, then to Assistant Superintendent with the addition of Director of Technology and thereafter, to Superintendent of the School District, then there is no

---

[6]If all employees of the District avail themselves of this Policy and Plaintiff was denied the benefit of this Policy, this denial in and of itself, constituted a disparate discriminatory treatment of the Plaintiff.

-16-

reason why the Plaintiff who was first hired as Manager of Technology, then promoted to a Director of Technology could not avail himself of the District's Open Advancement Policy, with the receipt of type 75 Certification, to be reclassified as a TRS staff employee or to apply for any other position within the School District. The affiants asserted unequivocally that the Plaintiff should have been reclassified as a TRS staff employee because he had Type 75 Certification, and was a cabinet member and an administrator. Further, they stated that the Defendants made a material misrepresentation to have stated that the Plaintiff, having had a Type 75 Certification and being an administrator and a cabinet member, was not qualified for reclassification as TRS staff employee. See Exhibits "E", pages 4-5 and "F", pages 3-5.

The assertion of the Open Advancement Policy by the affiants in their affidavits of March 6, 2011 was new information and evidence that were not available to the Plaintiff prior to the dismissal of his case on January 6, 2011. This new information totally debunked and contradicted the Defendants' hard line stance that the Plaintiff who was initially hired as a Manager of Technology could never be reclassified as TRS employee or apply to any other available and open position within the School District for which he was qualified. By relying on Defendants' representation, Plaintiff voluntarily dismissed his Second Amended Complaint, and was damaged thereby. Had Plaintiff known at the time that Defendants made this representation that it was not true and had Plaintiff been aware of the Open Advancement Policy of the District which the Defendants knew existed but denied to the Plaintiff, Plaintiff would not have dismissed his Second Amended Complaint.

## F. The Affiants Confirmed Plaintiff's Claim that Defendants skewed the Investigation of the Alleged Sexual Harassment Charges against the Plaintiff

During her deposition, Dr. Patterson testified that she and her alleged Investigation Team unilaterally decided who to interview and whose testimony was important to their "investigation". See Dr. Patterson's deposition marked Exhibit "D" supra, pages 130-133. At the very minimum, the Team did not consider the testimonies of these two board members - Mrs. Hamm and Mr. Cole - as germane to this case.

Further, Dr. Patterson who also accused the Plaintiff of sexual harassment chaired the investigation of all other sexual harassment allegations against the Plaintiff including her own. Her very presence on the Investigation Team and chairing the Team was a poison pill that poisoned the entire investigation and rendered the outcome of the investigation dubious, flawed, skewed, and a nullity!

Defendants have argued over and over in their response that Plaintiff has no excuse for not fully exploring all the issues that Plaintiff has raised in discovery and, therefore, these issues did not constitute new evidence or information. If the defendants had not resisted and refused to present these affiants including Dr. Covault for their deposition despite notices and communication from plaintiff's counsel and despite the affiants always being ready to be deposed in order to give the same information they have voluntarily given in their affidavits, if the defendants have not repeatedly and consistently made oral motions to this Court to have discovery stayed on the false *raison d'etre* that plaintiff was merely harassing the defendants, and if this Court had not stayed discovery on the defendants' oral motion on the date that plaintiff's counsel was not in court, then Plaintiff would have had the opportunity of exploring all the issues raised in his Motion to Vacate the dismissal Order of

January 6, 2011 and would have been able to uncover the pervasive misrepresentation and outright fabrication by the defendants in the course of this proceeding. The fact that Ms. Hamm and Mr. Cole who are senior members and past Presidents of the Board of Directors broke rank with the Board and the District and voluntarily gave uninhibited trenchant and incisive affidavits based on their personal knowledge speaks volume and should give this Court a pause as to the defendants' credibility and questionable defense!!! The Honorable Hamm and the Honorable Cole must be praised for being whistleblowers in this case and alerting the Court as to the misconduct and misrepresentations of the defendants and their defense attorneys.

As a final comment to the Defendants' claim of regret on Plaintiff's part, Defendants commit the fallacy of *non causa pro causa* by stating that Plaintiff is requesting to vacate his dismissal out of regret without actually showing how and why Plaintiff is now regretting his action and how the Defendants have come to know Plaintiff's *mens rea* in seeking to vacate the dismissal. This is nothing more than a false cause fallacy when something is identified as the cause of an event, but it has not actually been shown to be the cause. For example: "I took an aspirin and prayed to God, and my headache disappeared. So God cured me of the headache." Further, Defendants' argument is an *argumentum ad misericordiam* by imposing pity on the plaintiff when in fact it is the defendants who are requesting for pity for engaging themselves in sanctionable egregious conduct for misrepresenting facts in this proceeding, for outright lying in this proceeding, for hiding witnesses in this proceeding, for intimidating witnesses in this proceeding, for coordinating witnesses to carry out unsavory illegal actions in this proceeding, for violating the ethics of the legal profession in this proceeding, etc, etc., etc.

-19-

Based on the fraud, misrepresentation, and misconduct perpetrated by these Defendants and their attorneys, this Court should vacate the Order entered on January 6, 2011 dismissing Plaintiff's Second Amended Complaint with prejudice.

## RELIEF

Based on the foregoing, Plaintiff, WALE ADE-OSHIFOGUN prays this Honorable Court for the following relief:

A.    Vacate the Order of January 6, 2011 dismissing this case with prejudice.

B.    Reinstate case, and

C.    For further and other relief that this Court deems equitable and just.

Respectfully submitted,

**WALE ADE-OSHIFOGUN**

By:_____ /s/ Paul O. Otubusin _____
One of His Attorneys

Date: October 11, 2011

Paul O. Otubusin
ARDC No: 6205261
OTUBUSIN & ASSOCIATES, P.C.
77 West Washington Street
Suite 1204
Chicago, IL 60602
E-mail: otubusinlaw@aol.com
(312) 251-1480
(312) 251-1481 (Fax)

-20-