**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **WALE ADE-OSHIFOGUN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | No. 09 C 6327 |
| ) | |
| **PRAIRIE-HILLS ELEMENTARY SCHOOL** ) | Judge Rebecca R. Pallmeyer |
| **DISTRICT #144, CAROLYN SMILEY,** ) | |
| **JUANITA McWILLIAMS, PRINCESS** ) | |
| **JORDEN, and DR. KIMAKO PATTERSON,** ) | |
| ) | |
| **Defendants.** ) | |

**MEMORANDUM ORDER**

Wale Ade-Oshifogun was employed by Defendant, Prairie Hills Elementary School District #144, until June 2009. The District chose not to renew his employment contract after an investigation of allegations that Plaintiff had sexually harassed some of his subordinates. Ade-Oshifogun brought a laundry list of claims against the women who had complained and against the School District and its officials. After months of contentious discovery and motion practice, Plaintiff voluntarily dismissed his lawsuit. He now moves pursuant to FED. R. CIV. P. 60(b) to vacate the dismissal, arguing that Defendants are guilty of fraud and that he has new evidence that could not have been discovered earlier. For the reasons explained below, the motion is denied.

**PROCEDURAL BACKGROUND**

In the wake of an investigation of sexual harassment allegations, Ade-Oshifogun received notice in April 2009 that his employment contract with the School District would not be renewed for the following academic year. He initiated this lawsuit in October 2009, naming, as Defendants, the person who reported the alleged harassment, three employees who furnished information during the investigation, the School District, and several District officials. Plaintiff's Second Amended Complaint [30], filed on March 12, 2010, spans 85 pages and includes 442 allegations and 18 counts: one count of national origin discrimination (Count I); one count of breach of contract (Count

II); one count of wrongful discharge (Count III); five counts of defamation (Counts IV, V, VI, VII, and VIII); five counts of "false light" invasion of privacy (Counts IX, X, XI, XII, and XIII); and five counts of intentional infliction of emotional distress (Counts XIV, XV, XVI, XVII, and XVIII). The various Defendants answered certain of these claims and filed motions to dismiss and for summary judgment on other counts.

Discovery and motion practice ensued. The parties briefed and argued motions to compel and for discovery limitations. Then on December 29, 2010, facing at least two dispositive motions, Mr. Ade-Oshifogun moved for voluntary dismissal of his case, with prejudice, for "undisclosed reason(s) best known to the Plaintiff." (Verified Mot. for Voluntary Dismissal [110].) The court granted that motion and dismissed the case with prejudice on January 6, 2011. Defendants filed their bill of costs on January 18, 2011. They also filed a motion for sanctions pursuant to Rule 11, contending that Plaintiff's claims were frivolous from their inception and had generated significant unnecessary expense. Over several weeks, the parties briefed the issues of costs and sanctions.

In June 2011, Mr. Ade-Oshifogun had a change of heart about his decision to dismiss the case. He moved to vacate the dismissal order, asserting, without elaboration, that "there is evidence of strong possibility that the Defendants and their attorneys committed fraud upon the Court and against the Plaintiff." (Pl.'s Mot. to Vacate Order of Jan. 6, 2011 Dismissing This Case with Prejudice and Reinstate Case [139].) The court struck that motion without prejudice, directing that any renewed motion be "supplemented with sworn factual support." (June 25, 2011 Minute Order [143].) Plaintiff did renew the motion. He now asserts that on March 6, 2011, two School Board members, Sarah Hamm and Anthony Cole, came forward with sworn statements, more fully described below, that contradicted assertions Defendants had made in this litigation. Plaintiff argues in addition, that Defendants and their witnesses had made knowing false statements in this litigation. According to Plaintiff, these circumstances support Rule 60(b) relief.

**RULE 60(b) MOTION**

As the Seventh Circuit has recently explained, "relief under Rule 60(b) is an extraordinary remedy granted only in exceptional circumstances." *Nelson v. Napolitano*, 657 F.3d 586, 589 (7th Cir. 2011) (citing *Wickens v. Shell Oil Co.*, 620 F.3d 747, 759 (7th Cir. 2010); *Eskridge v. Cook Cnty.*, 577 F.3d 806, 809 (7th Cir. 2009)). Whether to grant such relief is a matter within the discretion of the district court. *Wickens*, 620 F.3d at 758; *Eskridge*, 577 F.3d at 808-09. The Rule authorizes relief from a judgment under a number of circumstances including, as relevant here, where there is "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)" or "fraud . . . , misrepresentation, or misconduct by an opposing party." FED. R. CIV. P. 60(b)(2)-(3). The case law demonstrates that relief under Rule 60(b) is extraordinary. *Dickerson v. Board of Educ.*, 32 F.3d 1114, 1116 (7th Cir. 1994). Fraud is a basis for such relief only where the adverse party's conduct prevented the moving party from fully and fairly presenting a meritorious claim. *Wickens*, 620 F.3d at 758-59 (citing *Ty Inc. v. Softbelly's Inc.*, 353 F.3d 528, 536 (7th Cir. 2003); *Lonsdorf v. Seefeldt*, 47 F.3d 893, 897 (7th Cir. 1995)).

In a 34-page memorandum, Plaintiff urges that these tests are met. He contends that Defendants took false positions in the litigation. He also asserts, without offering specific details, that two witnesses have recently come forward to offer evidence inconsistent with Defendants' assertions. Having carefully reviewed the materials submitted by Plaintiff, the court finds no basis for any finding of fraud. To the extent that Ms. Hamm and Mr. Cole have information that rebuts positions taken by Defendants in this lawsuit, Plaintiff has made no effort to demonstrate that the information was unavailable to him during the pendency of the lawsuit. To the contrary, Plaintiff identified Ms. Hamm and Mr. Cole as persons "likely to have discoverable information relevant to disputed facts" in his Rule 26(a)(1) disclosures, submitted in June 2010. (Pl.'s Initial Disclosure, Ex. 2 to Supplemental Response Brief [153].) Finally, the court notes that many of the disputes

Plaintiff now highlights are not material to the claims he asserted in this lawsuit. The court discusses the specific bases for Plaintiff's motion below.

**DISCUSSION**

First, in arguing that the dismissal order should be vacated for fraud, Plaintiff focuses much of his attention on the testimony of Dr. Kimako Patterson, one of the named Defendants. Dr. Patterson was involved in the investigation of sexual harassment allegations against Plaintiff, but her participation was improper, Plaintiff contends, because Dr. Patterson herself had a sexual harassment claim against him. Dr. Patterson was asked about this matter at her deposition; when asked whether she "also had a complaint of sexual harassment against [Plaintiff]," Dr. Patterson responded, "No, I did not." (Pl.'s Mot. to Vacate Order of Jan. 6, 2011 Dismissing This Case With Prejudice and Reinstate Case [146] (hereinafter "Pl.'s Mot. to Vacate"), at 4.) But this statement was false, Plaintiff insists; he contends Ms. Hamm and Mr. Cole have asserted that Dr. Patterson did indeed accuse Plaintiff of sexual harassment before the School Board.

As the court reads Ms. Hamm's and Mr. Cole's affidavits, they do not directly contradict Dr. Patterson's testimony. Ms. Hamm asserted that Dr. Pattterson "openly accused [Plaintiff] of sexual harassment . . . in that [Plaintiff] allegedly made a statement of sexual nature to her." (Hamm Aff., Ex. C to Pl.'s Mot. to Vacate, ¶ 5.) Mr. Cole asserted that Dr. Patterson "accused [Plaintiff] of sexual harassment . . . and alleged that [Plaintiff] made a statement of sexual nature to her." (Cole Aff., Ex. D to Pl.'s Mot. to Vacate, ¶ 5.) Dr. Patterson's "open accusations" might well, of course, have been statements about Plaintiff's harassment of other workers. And her reference to a "statement of sexual nature" likely related to the fact, now admitted by Plaintiff, that Plaintiff had told Dr. Patterson (his supervisor) that she is "cute, intelligent, and had a big butt." (Plaintiff alleged that this statement was a lie (Second Am. Compl. [30] ¶¶ 266, 399), but in response to discovery requests acknowledged that he had indeed used those words in speaking with Dr. Patterson "within the context of weight reduction and professional appearance." (Pl.'s Supplemental Answer to Def.'s

4

First Set of Interrogs., Ex. B to Defs.' Brief in Supp. of Their Mot. for Sanctions Pursuant to Rule 11 [122] (hereinafter "Defs.' Sanctions Brief"), at 3.).)

There is no evidence that any comments or accusations Dr. Patterson made amounted to a "complaint" of sexual harassment on her own behalf. Indeed, Ms. Hamm and Mr. Cole themselves state, under oath, that "[t]here was never any time that Dr. Foster, Dr. Kimako Patterson or any other supervisors in Technology Department for the School District brought any allegations of sexual harassment against [Plaintiff] to the Board." (Hamm Aff. ¶ 35; Cole Aff. ¶ 35.) Though Plaintiff suggests Dr. Patterson concealed from him the fact that she did make statements about him to the School Board, Defendants note that during Dr. Patterson's deposition, counsel never asked her what statements she had made to the Board. There is no basis for a finding of fraud here.

Plaintiff's second argument fares no better. Plaintiff urges that Dr. Patterson falsely testified that she and Camille Cribaro-Mello together performed the investigation of sexual harassment allegations against Plaintiff. In fact, Plaintiff asserts, Ms. Hamm and Mr. Cole have confirmed that Attorney Robert Riley also served on the investigative team. Yet when asked what role Riley played in the investigation, Dr. Patterson said she did not understand the question. Plaintiff contends that Dr. Patterson herself, as well as the attorneys who participated in her deposition, had an obligation to correct the record and disclose Mr. Riley's participation in the investigation. Had they done so, Plaintiff urges, the court would not have sustained Defendants' objections to his efforts to depose Mr. Riley, and Plaintiff would have had a basis to seek Mr. Riley's disqualification from the case.

Whatever was the nature of Dr. Patterson's confusion, her testimony obviously did not mislead Plaintiff. He was aware from the time he filed this lawsuit that Dr. Riley was one of three members of the investigative team, and so alleged in his initial pleading and in the Second Amended Complaint . (Compl. [1] ¶¶ 26, 109, 127; Second Am. Compl. ¶¶ 52, 164, 196, 221, 247,

5

271, 298, 330, 355, 381, 405.) The court sustained Defendants' objection to Mr. Riley's deposition without prejudice. The court did so not because it was under a misapprehension about his participation in the investigation, but because he was counsel of record, and because Plaintiff refused Defendants' reasonable request to delay that deposition until such time as discovery revealed Mr. Riley had information unavailable from other sources. Dr. Patterson's testimony concerning Mr. Riley's role in the investigation did not prejudice Plaintiff and does not constitute fraud.

Plaintiff's third argument is that Dr. Patterson falsely testified that Plaintiff himself was not an "administrator." Ms. Hamm and Mr. Cole have asserted that Plaintiff "attended all cabinet meetings as an administrator." (Hamm Aff. ¶ 19; Cole Aff. ¶ 18.) Plaintiff claims that he relied on Dr. Patterson's misrepresentation on this issue and was damaged as a result, but he does not explain how. Plaintiff presumably was aware all along of the role in which he attended meetings. And he has insisted from the outset that he was indeed an administrator within the School District's "Cabinet." (Second Am. Compl. ¶¶ 29, 38, 43, 46, 59, 113, 118, 121, 122, 127.) Testimony from Ms. Hamm and Mr. Cole that would support this allegation was at all times available to him. Defendants' position, as stated in discovery responses, is that Plaintiff "was a supervisor and a manager," but not an administrator, and was employed pursuant to a one-year contract. (Defs.' Resps. to Pl.'s First Set of Interrogs., Ex. E to Pl.'s Mot. to Vacate, ¶¶ 3, 6, 7.) Viewing the circumstances in the light most favorable to Plaintiff, there may be a dispute concerning whether Plaintiff is an "administrator," and the resolution of that dispute may be relevant to Plaintiff's breach of contract claim. The existence of a dispute or disagreement concerning this issue does not render Dr. Patterson's testimony fraudulent, however. And nothing about Ms. Hamm's or Mr. Cole's statements is at all new to Plaintiff.

Fourth, Plaintiff has argued that Defendants were required to give him notice that his contract would not be renewed no later than February 1, 2009. Defendants have denied this, but

this denial, too, was false, according to Plaintiff. He again cites information furnished by Ms. Hamm and Ms. Cole that "the Board would usually inform the senior administrators and directors of the District" no later than February 1 concerning contract renewal. (Hamm Aff. ¶ 15; Cole Aff. ¶ 15.) Plaintiff's suggestion that the February 1 notice policy is new evidence in support of his claim is baseless. He alleged in his initial complaint in this lawsuit that he was entitled to notice of non-renewal "by the month of February each year." (Compl. ¶¶ 35, 53, 72, 84, 92, 104, 118, 136.) By the time he filed his Second Amended Complaint, Plaintiff specifically identified February 1 as the date on which he was entitled to notice. (Second Am. Compl.¶¶ 38, 40, 41, 44, 59, 86, 112, 115, 116, 119, 122, 127, 154.) Again, there appears to be, at worst, a dispute of fact concerning this issue. Months before Plaintiff dismissed his lawsuit voluntarily, the School District moved for summary judgment on his breach of contract claim, arguing that no Board policy requires notice by February 1 of nonrenewal of a contract. Indeed, Dr. Patterson testified at her deposition that her own contract had not been renewed until June of the previous year. (Patterson Dep., Ex. A to Defs.' Sanctions Brief, at 56-57.) A dispute concerning Plaintiff's entitlement to notice is just that—a dispute. It does not establish that Defendants' position is false or fraudulent. The court does not assume Defendants are correct; but the court is not free to assume the truth of everything asserted by Plaintiff and his witnesses, either.

Fifth, Plaintiff contends, Defendants stated in their interrogatory answers and motion for summary judgment that Plaintiff was "not qualified to be reclassified as a TRS staff employee." (Pl.'s Mot. to Vacate at 17.) According to Plaintiff, this statement is inconsistent with the School District's "Open Advancement Policy" and its policy of promoting employees from within the District. Both Ms. Hamm and Mr. Cole stated in their affidavits that "Wale [Ade-Oshifogun] had Type 75 certification and should have been reclassified as a TRS employee." (Hamm Aff. ¶ 22; Cole Aff. ¶ 21.) Again, Plaintiff's claim to "Type 75 certification" and entitlement to classification as a Teachers Retirement System employee has been a central focus of this lawsuit, and was

7

prominently alleged in his Second Amended Complaint. (Second Am. Compl. ¶¶ 30, 33, 37, 40, 101, 102, 104, 108.) Thus there is nothing new about this dispute, which is just that—a dispute potentially to be resolved in litigation, not a basis for the conclusion that Defendants are guilty of fraud.

Plaintiff's sixth argument is a challenge to the integrity of the investigation of sexual harassment allegations that Defendant performed. Plaintiff urges that Defendants interviewed "only select favorable witnesses" and failed to interview "23 other unfavorable witnesses." (Pl.'s Mot. to Vacate at 21.) Plaintiff notes that Ms. Hamm and Mr. Cole have doubts concerning the credibility of the sexual harassment allegations. (*Id.* at 22-25.) Moreover, Mr. Hamm and Mr. Cole are suspicious of the sexual harassment complaints because no written complaints were presented prior to March 2009. (Hamm Aff. ¶ 49; Cole Aff. ¶ 73.)

Nothing about this challenge is at all novel. From the very beginning of this lawsuit, Plaintiff challenged the nature and thoroughness of the investigation of the allegations of sexual harassment against him. His original complaint charged the Investigative Team with interviewing "select witnesses" and reaching conclusions "surreptitiously." (Compl. ¶¶ 27, 62A, 81A, 81C, 101A, 110, 121R, 128.) He claimed that the team had solicited witness statements "well after the fact." (*Id.* ¶¶ 38B, 121B, 139B.) He alleged that Dr. Patterson had a conflict of interest. (*Id.* ¶¶ 38J, 38K, 58, 59, 62C, 77, 78, 97, 98, 101C, 121J, 121K, 121Riii, 139J, 139K, 139Riii.) He complained that persons he deems more fair were not part of the team. (*Id.* ¶¶ 38M, 61, 80, 100, 121M, 139M.) He presented evidence and arguments concerning the makeup of the investigative team, and its activities, in response to Defendants' Motion for Summary Judgment, arguing that the investigative team had interviewed only seven "select" witnesses and had declined to interview persons who would have offered information favorable to him. (Pl.'s Resp. Mem. in Opp. to Defs.' Mot. for Summ. J. [61], at 5-6.) In short, what Plaintiff now claims is a basis for Rule 60 relief is nothing

more than a reiteration of the arguments he has made from the outset: that the investigation of sexual harassment allegations was flawed and unfair.

Defendants urge that perceived flaws in the fairness of the investigation are not relevant to any of Plaintiff's claims in this lawsuit. Indeed, there is no basis to conclude the manner of the investigation had anything to do with Plaintiff's national origin (Count I). He has not asserted that he had some contractual right to an investigation that satisfies his own standards of fairness (Count II). To the court's knowledge, there is no free-standing right to be spared "wrongful discharge" (Count III); even if such a right exists, the court will not assume it incorporates procedural protections surrounding an employer's investigations of alleged wrongdoing. But the court need not reach this issue. Plaintiff was well aware of the nature and purported shortcomings of the investigation before he filed his lawsuit. The argument that these shortcomings constitute "newly discovered evidence" is a nonstarter.

When relief is sought under Rule 60(b), "[t]he policy of the law to favor a hearing of a litigant's claim on the merits must be balanced against the desire to achieve finality in litigation." 11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2857 (2d ed. 1987 & Supp. 2011) (footnote omitted). On the eve of the date on which he was to respond to summary judgment motions, Plaintiff Ade-Oshifogun voluntarily dismissed his lawsuit with prejudice, for reasons he declined to disclose. Months later, he has changed his mind, but nothing he cites as a basis for this decision was unknown to him at the time withdrew the case in the first place. Nor has he identified any evidence of "fraud."

**CONCLUSION**

Plaintiff's motion to vacate the order of dismissal [146] is denied.

ENTER:

Dated: March 28, 2012

_____
REBECCA R. PALLMEYER
United States District Judge